THE STATE OF KANSAS v. CHARLES SKINNER.—THE STATE OF KANSAS v. JAMES GORMALY.—THE STATE OF KANSAS v. J. N. FREW.—THE STATE OF KANSAS v. JAMES CARNINE.—THE STATE OF KANSAS v. GUS. TEFT.

1. ABATEMENT—*Nature of Plea.* A plea in abatement is a dilatory plea, and must be pleaded with strict exactness; it must be certain to every intent.

2. ——— *Plea, When Not Sustained.* Under the provisions of § 79 of the criminal code, no plea in abatement taken to any grand jury duly charged and sworn, for any irregularity in their selection, will be sustained, unless it be one that implies corruption.

3. INDICTMENT; *Separate Counts; Number of Challenges.* Where an indictment or information in separate counts states separate misdemeanors of a kindred character, against the same person, the defendant is not entitled to four peremptory challenges upon each count or separate offense, but is entitled, upon the trial, under the indictment or information, to four peremptory challenges, *and no more.* (Crim. Code, § 198.)

4. ——— *Separate Counts; Election by The State.* Where an indictment or information charges in separate counts separate public offenses, and they are all misdemeanors of a kindred character and against the same person, the defendant cannot, as a matter of right, require the state, before the trial, to elect upon what count or specific offense it will rely for conviction.

5. ——— *Incompetent Evidence for Defense.* Where distinct transactions in cases of misdemeanors are joined in separate counts in one indictment against the same person and followed by one trial for all, the defendant cannot prove by the county attorney, or any witness before the grand jury, that the offenses for which he is being tried were not the identical offenses which the grand jury had in contemplation when finding the indictment, as the grand jury are at liberty to find a bill upon their own knowledge.

6. PROHIBITORY LIQUOR LAW; *Proprietor of Premises; Competent Evidence for The State.* In a case where the defendant is charged with unlawfully selling intoxicating liquors without a permit, in violation of the prohibitory liquor law of the state, and evidence is introduced making the question important, it is not error for the court to permit the witness to answer as to "who assumed to be the proprietor of and to control the premises described in the indictment." Even if the evidence offered be regarded rather as an opinion than a fact, it is of such a character of opinion as may be stated by a person who witnessed the conduct and conversation of the defendant at the time, upon the premises.

7. ——— *Principal and Agent.* Where a person acts as clerk or agent of another in selling intoxicating liquors for him, with his knowledge and consent, in violation of law, the principal may be prosecuted and punished for such unlawful sales by his clerk or agent; and in such a case, where it is admitted that the principal has no permit to sell intoxicating liquors, it is not necessary for the state in the first instance, in order to convict the principal, to show that his clerk or agent had no permit, if the sales were made by the clerk or agent for the principal, in the ordinary line of his duty.

8. REFUSAL OF DEFENDANT TO TESTIFY; *Instruction, not Erroneous.* The following instruction *held* not to violate ₴ 215 of the criminal code, which provides that the neglect or refusal of the person on trial to testify shall not be considered by the court or jury before whom the trial takes place, viz.: "You are not authorized by law to arbitrarily reject, without cause or reason, the testimony of any witness, but it is your duty to carefully examine and so far as possible harmonize all the testimony in the case upon the basis of truth; but if you are unable to do this, then you are authorized, and it is your duty, to reject such of it as you may think not entitled to credit; and in considering the testimony you should not draw any unfair inferences or unjust conclusions against the defendant because of any failure or omission on his part to offer any particular kind of evidence, but he should be tried alone upon the facts proved. You are to presume the existence of no fact unless it has been testified to; you are to found your verdict on the testimony delivered by the witnesses upon the witness stand, and are not to supplement it with some other fact that you may think exists, but which has not been proved."

9. JURY; *Challenge to Array; Talesmen.* Where a challenge to the array or panel of petit jurors is sustained, there need be no delay on the part of the court in summoning, under the provision of the statute, a sufficient number of persons properly qualified to act as jurors in any case. (Comp. Laws of 1879, ch. 54, §§ 23, 26; *Trembly v. The State,* 20 Kas. 116.)

*Appeals from Osage District Court.*

ON April 21, 1884, an indictment was filed in the district court of Osage county against *Charles Skinner,* charging him in seven different counts with unlawfully selling intoxicating liquors in violation of chapter 128, Laws of 1881, commonly known as the prohibitory liquor law. Afterward, *Skinner* was arrested, and at the proper time filed a plea in abatement, which charged that the trustees of Osage county for the year 1884 did not select for jury service the names of persons on the assessment rolls of 1883, but willfully neglected, failed and refused so to do; that instead, they substantially and palpably disregarded the law, and made their selection of names from a class of persons incompetent to serve; that the foreman and eight members of the grand jury who found the indictment against him, were of a class incompetent to be drawn or to serve. To this plea *The State* filed in writing its answer. Upon the trial *The State* objected to the introduction of any testimony under the plea in abatement, because it did not state facts sufficient to constitute a defense, or sufficient to abate the cause of action. The court sustained the objection, and refused to hear or consider any evidence of the defendant under said plea. Thereupon, before the trial, the defendant filed in writing his motion to require *The State* to elect as to what specific offenses it would rely upon, which motion was overruled. The defendant then (May 23, 1885) waived arraignment, and pleaded not guilty. The jury returned a verdict of "not guilty" upon the 1st, 6th and 7th counts of the indictment, and found the defendant guilty upon the 2d, 3d, 4th and 5th counts. On May 23, 1885, the defendant filed his motion for a new trial, and on June 4, 1885, filed his motion in arrest of judgment, alleging therein that the grand jury

that found the indictment had no legal authority to inquire into the offenses with which the defendant was charged, and that the facts stated in the indictment do not constitute any offense. These motions were overruled, and on said June 4, 1885, the court sentenced the defendant to pay a fine of $100 on the 2d count, $200 on the 3d count, $200 on the 4th count, and on the 5th count to be committed to the jail of Osage county for a period of thirty days—the fines in all aggregating the sum of $500. It was further adjudged that the defendant pay the costs of the prosecution, taxed at $——, and that he be committed to the jail of the county until the fines and costs were paid. The defendant excepted to the rulings, orders and judgment of the court, and brings his case here.

On October 14, 1884, an indictment was filed in the district court of Osage county against *James Gormaly*, charging him in eleven counts with unlawfully selling intoxicating liquors in violation of the prohibitory liquor law of 1881. The same plea in abatement to the indictment made in the Skinner case was made in this case, with the same result. Before the trial, the defendant moved the court to require the state to further inform him for what specific offenses he was to be tried, which was denied. Trial was begun May 20, 1885, before the court with a jury. The defendant demanded four peremptory challenges for each offense or count stated in the indictment, but was limited to and made use of four only, the others being denied. The jury returned a verdict of not guilty as charged in the 4th, 5th, 6th, 7th, 8th, 9th, 10th and 11th counts of the indictment, but found him guilty as charged in the 1st, 2d and 3d counts. A motion for a new trial was filed by the defendant on May 21, 1885, and a motion in arrest of judgment was filed by him on June 4th, 1885. These motions were overruled, and the defendant was sentenced to pay a fine in the sum of $100 on the first count of the indictment, $200 on the second count, and upon the third count he was ordered to be committed to the jail of Osage county for a period of thirty days—the fines aggregating $300. The defendant was also adjudged to be committed to the jail of the county until

the fines and costs were paid. The defendant excepted to the rulings, orders and judgment of the court, and brings his case here.

On October 21, 1884, an indictment was filed in the district court of Osage county against *J. N. Frew*, charging him in eleven counts with unlawfully selling intoxicating liquors in violation of the prohibitory liquor law of 1881. The same plea in abatement to the other indictments was made in this case. He also filed a motion to require the state to elect, which was refused. Trial had May 28, 1885, before the court with a jury. The jury returned a verdict of not guilty as to the 6th, 7th, 8th, 9th, 10th and 11th counts of the indictment, but found him guilty as charged in the 1st, 2d, 3d, 4th and 5th counts. Motions for a new trial and in arrest of judgment were filed and overruled; and on June 5, 1885, the defendant was sentenced to pay a fine of $100 on the 1st count of the indictment, $100 on the 2d count, $100 on the 3d count, $200 on the 4th count, and to be committed to the jail of Osage county for a period of thirty days upon the 5th count — the fines aggregating in all $500. The defendant was also adjudged to be committed to the county jail of the county until the fines and costs were paid. The defendant excepted to the rulings, orders and judgment of the court, and brings the case here.

On October 23, 1884, an indictment was filed in the district court of Osage county against *James Carnine*, charging him in four counts with unlawfully selling intoxicating liquors in violation of the prohibitory liquor law of 1881. He also filed a plea in abatement, which was disposed of as the others were. He also demanded four peremptory challenges upon each count or offense stated in the indictment, but was limited to and made use of four only. Trial was begun June 4, 1885, before the court with a jury. The jury returned a verdict of not guilty upon the 1st count of the indictment, but guilty as charged in the 2d, 3d and 4th counts of the indictment. Motions for a new trial and in arrest of judgment were filed, which were overruled; and on June 5, 1885, the court sen-

tenced the defendant to pay a fine of $100 on the 2d count of the indictment, $200 on the 3d count, and that he be committed to the jail of Osage county for a period of thirty days on the 4th count — the fines aggregating $300. It was further adjudged that the defendant stand committed to the jail of the county until the fines and costs were fully paid. The defendant excepted to the rulings, orders and judgment of the court, and brings the case here.

On October 24, 1884, an indictment was filed in the district court of Osage county against Gus. Teft, charging him in thirteen counts with unlawfully selling intoxicating liquors in violation of the prohibitory liquor law of 1881. The same plea in abatement to the indictment made in the foregoing cases was made in this case, with the same result. Trial was begun February 24, 1885, before the court with a jury. The defendant entered a verbal challenge to the array and entire panel of jurors, which was overruled. The jury returned a verdict of guilty as charged in each and every count of the indictment, excepting the 2d count thereof. Subsequently, motions for a new trial and in arrest of judgment were filed. The motion for a new trial was overruled as to the 1st, 3d, 4th, 5th, 6th, 7th, 8th and 13th counts of the indictment, but sustained as to the 2d, 9th, 10th, 11th and 12th counts thereof. The motion in arrest of judgment was wholly overruled. The indictment and the 2d, 9th, 10th, 11th and 12th counts thereof were continued, and the defendant required to give bail in the sum of $500. The court sentenced the defendant to pay a fine of $100 on the 1st count, $125 on the 3d count, $150 on the 4th count, $175 on the 5th count, $200 on the 6th count, $225 on the 7th count, and that the defendant be committed to the jail of Osage county for a term of thirty days upon the 8th count, and that he be committed to jail of said county forty-five days on the 13th count — the fines aggregating $975, and the imprisonment 75 days. The defendant was further adjudged to be committed to the county jail of the county until the fines and costs were paid. The defendant

excepted to the rulings, orders and judgment of the court, and brings the case here.

*Ellis Lewis,* and *Waters & Chase,* for appellants.

*S. B. Bradford,* attorney general, for The State; *Edwin A. Austin,* of counsel.

The opinion of the court was delivered by

HORTON, C. J.: In all these cases the defendants were convicted of unlawfully selling intoxicating liquors without a permit, in violation of the prohibitory liquor law of 1881. They are so nearly similar, and have so many points in common, that they may be considered together.

I. We think the trial court very properly refused to receive any evidence in support of the pleas in abatement, charging that the members of the grand jury returning the indictments in these cases were not drawn and summoned in accordance with the provisions of the statute. A plea in abatement is a dilatory plea, and must be pleaded with strict exactness — it must be certain to every intent; consequently, we must construe the pleas as alleging that the grand jurors were incompetent simply because the trustees of Osage county for the year 1884 did not select for jury service the names of persons on the assessment rolls of 1883. It is nowhere alleged in the pleas that the grand jurors were minors, aliens, or insane persons; therefore, while the grand jurors were not drawn or summoned from the class or list prescribed by the statute — and in that regard the essential provisions of the statute were disregarded — the pleas go merely to the selection and drawing of the jurors, and not to the personal disqualifications of the jurors, as that phrase is understood. In the excellent work of Thompson & Merriam on Juries, it is said that the reports show no authentic instance of a challenge allowed to grand jurors, either individually or to the array, at common law. (§ 507.) If we look to the statute, we find that § 79 of the criminal code provides:

"No plea in abatement, or other objection, shall be taken to any grand jury duly charged and sworn, for any alleged irregularity in their selection, unless such irregularity, in the opinion of the court, amounts to corruption, in which case such plea or objection shall be received."

Under the terms of the statute, no objection going merely to the manner of the selection or drawing of a grand jury will be recognized, unless it be one that implies corruption. ( *The State v. Marsh*, 13 Kas. 596; *Hardin v. State*, 22 Ind. 347.)

II. Each indictment contained several counts — each count charging a separate offense. Upon the trial, each defendant claimed the right to four peremptory challenges for each count or separate offense contained in the indictment found against him, but was limited to four only. Peremptory challenges were not allowed at common law in trials for misdemeanors. ( Wharton's Cr. Pl., 8th ed., § 618.) The statute regulating peremptory challenges in criminal cases reads:

"The defendant, in every indictment or information, shall be entitled to a peremptory challenge of jurors in the following cases, as follows: . . . 4th. In cases not punishable with death or imprisonment in the penitentiary, to the number of four, and no more." ( Crim. Code, § 198.)

With the knowledge that separate public offenses, where they are all misdemeanors of a kindred character and charged against the same person, might be joined in separate counts in the same indictment or information, the legislature has declared that the defendant in every indictment or information is entitled, in cases like those under review, to four peremptory challenges of jurors, *and no more*. The statute seems to us clear and conclusive, and to limit the defendants to the challenges stated therein, whether the indictment or information contains one or more counts. In civil cases it is said that peremptory challenges are allowed to protect parties not so much from the bias or prejudice which might arise in the mind of a juror from personal dislike or hatred of those who might happen to be plaintiffs or defendants in the action, but rather that which might relate to or grow out of the subject-matter

in controversy. (*Stone v. Segur*, 93 Mass. 568.) In a criminal case, it is understood that the peremptory challenge is allowed to the accused upon his own dislike to the individual juror challenged; that is, to protect him from the bias or prejudice in the mind of the juror from personal dislike or hatred of the party being tried. If there is anything in these theories for allowing peremptory challenges, it would be perfectly consistent for the legislature to limit the defendant in every indictment or information, to the challenges named in the statute, although separate public offenses were charged therein against him.

Whatever may be the reasons, however, for the allowance of peremptory challenges in civil and criminal cases, the statute must control; and the court having followed the terms of the statute, we perceive no error in its refusal to permit other peremptory challenges.

III. The court below committed no error in overruling the several motions of defendants, made before the trials, requiring the state to elect as to what specific offenses it would rely upon. This court has repeatedly decided that separate public offenses, where they are all misdemeanors of a kindred character and charged against the same person, may be joined in separate counts in one information, to be followed by one trial for all. (*In re Donnelly*, 30 Kas. 424; *In re Macke*, 31 id. 54; *The State v. Chandler*, 31 id. 201; *The State v. Crimmins*, 31 id. 376.)

After the state had introduced its evidence upon the trials, elections were made as to which particular transactions the state would rely upon for convictions. This is all the law requires, and was sufficient. (*The State v. Schweiter*, 27 Kas. 500; *The State v. Crimmins*, supra.)

IV. The defendants in the several actions offered to prove by the county attorney and other witnesses before the grand jury, that the offenses for which they were being tried were not the offenses for which they had been actually indicted, thus attempting to bring themselves within the law as recently

declared in *The State v. Brooks*, 33 Kas. 708.   The evidence
was rejected, and of this complaint is also made, but without
any good reason.   The county attorney and the other wit-
nesses, not being members of the grand jury, could not by
any possibility have had knowledge of the particular offenses
which the grand jury had in mind and intended to be covered
by the indictments, separate and apart from the allegations
therein.   Whenever required by any grand jury, it is the duty
of the county attorney to attend them for the purpose of
examining witnesses in their presence, or giving them advice
upon any legal matter; and such attorney may be allowed to
appear before the grand jury, on his request, for the purpose
of giving an opinion relative to any matter cognizable by
them, and may be permitted to interrogate witnesses before
them when they or he shall deem it necessary; but no such
attorney, or any other officer or person, except the grand jurors,
is permitted to be present during the expression of their
opinions, or the giving of their votes on any matter before
them. (Crim. Code, §§ 82, 83.)   Anciently, the grand jury
did not examine any witnesses, presentments being made alone
upon the knowledge of the members of the body.   Later, the
grand jury swore to make presentments, not only of matters
and things given in charge, but also of other matters and
things which should *come* to their knowledge.   It is still in
the power of grand jurors to find indictments on their personal
knowledge, with no superadded testimony. (*Regina v. Russell*,
1 Car. & M. 247; Thompson & Merriam on Juries, §§ 464,
467, 614; 1 Bishop on Crim. Pro., § 864; Crim. Code, §§ 75,
76.   See also §§ 91, 92, 93, of the Criminal Code.)

V.   In some of the cases it is urged that the court erred in
permitting the question to be asked and answered, as to who
assumed to be the proprietors of and controlled the premises
where the intoxicating liquors were obtained.   The evidence
was admissible.   It was not merely an opinion, but a fact de-
rived from the observations of the witness as to the conduct
and conversation of the defendants, which it was competent
for him to state; but if the evidence be regarded rather as an

opinion than a fact, accurately speaking, it was such character of opinion as may be stated by a person who witnessed the conduct and conversation of the parties at the time upon the premises.

VI. The court instructed the jury, if they found that the person or persons making the sales of intoxicating liquors made the same as clerk, agent or employé of any defendant, and in the ordinary line of his duty as such clerk, etc., then they should find such defendant liable on account of the sales so made, the same as if made by him in person. The court further instructed the jury that in such a case it was not necessary for the state to show that the clerk, agent or employé of the defendant, making the sales, did not have a permit to sell, intoxicating liquors. This instruction was objected to, and it is insisted that the court should have instructed the jury not to convict any of the defendants making sales through a clerk, agent, or employé, if the state failed to show that the clerk, agent or employé had no permit. We think otherwise. All the liquors were obtained as beverages; none for medical, scientific or mechanical purposes. None were had upon prescription or affidavit. After the state established that a defendant had no permit to sell intoxicating liquors, but sales thereof were made by his clerk, agent or employé in the ordinary line of his duty, it was not necessary for the state to go further and prove that the clerk, agent or employé had no permit. If any clerk, agent or employé of the defendants, or either of them, was a druggist at the time of the alleged offenses, and had a permit to dispose of intoxicating liquors in accordance with the provisions of the statute, and made sales according to the statute, then such person having a permit and selling liquors thereunder was not acting as the clerk, agent or employé of the defendants, or either of them, in making such sales, and therefore in thus disposing of liquors was not acting as the clerk or agent of the defendants, or either of them, in the ordinary line of his duty.

VII. One of the instructions is criticised upon the ground that it violated § 215 of the criminal code, which provides:

"The neglect or refusal of the person on trial to testify shall not raise any presumption of guilt, nor shall that circumstance be referred to by any attorney prosecuting in the case, nor shall the same be considered by the court or jury before whom the trial takes place."

The instruction was as follows:

"You are not authorized by law to arbitrarily reject, without cause or reason, the testimony of any witness, but it is your duty to carefully examine and so far as possible harmonize all the testimony in the case upon the basis of truth; but if you are unable to do this, then you are authorized and it is your duty, to reject such of it as you may think not entitled to credit; and in considering the testimony you should not draw any unfair inferences or unjust conclusions against the defendant because of any failure or omission on his part to offer any particular kind of evidence, but he should be tried alone upon the facts proved. You are to presume the existence of no fact unless it has been testified to; you are to found your verdict on the testimony delivered by the witnesses upon the witness stand, and are not to supplement it with some other fact that you may think exists, but which has not been proved."

We do not think the criticism justifiable, and considering all the language of the instruction, with the other instructions presented, said § 215 was not infringed.

VIII. In the Teft case, it is alleged that the defendant challenged the entire array and panel of petit jurors on account of the failure of the officers to select and draw the jurors from the class or list prescribed by statute. (Comp. Laws of 1879, ch. 54, §§ 1, 2.) Thereon, evidence was heard and the challenge overruled. Upon the evidence, the challenge ought to have been sustained. The facts bring the case within the authority of *The State v. Jenkins*, 32 Kas. 477. Where the challenge to an array of petit jurors is sustained, the statute provides ample authority for the court to summon a sufficient number of persons to serve as jurors. Sec. 23, ch. 54, Comp. Laws of 1879, reads:

"Whenever, for any cause, petit jurors shall not have been drawn and summoned to attend any court of record, or a sufficient number of qualified jurors shall not be in attendance

at such court, the court shall order a sufficient number to be immediately drawn and summoned as herein provided."

And § 26 of said chapter provides:

"When there shall not be jurors enough present to form a panel in any cause, the court may direct the sheriff or other officer to summon a sufficient number of persons having the qualifications of jurors, to complete such panel from the by-standers or from among the neighboring citizens, and the officer shall summon the number so ordered: *Provided*, That in case either party to such cause, by himself or his attorney, shall so request it, it shall be the duty of the judge of such court to select such jurors and cause a venire to issue for the same, naming the jurors so selected therein as hereinbefore provided."

Therefore, in case the challenge to the array of petit jurors be sustained at any term of court, there ought to be no delay on the part of the court in summoning, under the provisions of the statute, a sufficient number of persons to act as jurors in any case. ( *Trembly v. The State*, 20 Kas. 116; Crim. Code, § 208.)

Several other exceptions are presented in the briefs, but we do not think it necessary to notice them particularly. We have examined all the questions submitted, and find no error affecting the substantial rights of the parties, except the one noticed in the Teft case. (Crim. Code, § 293.) No reference is made in the briefs of defendants concerning the costs taxed in the cases, and therefore we omit further mention thereof. ( *Wilson v. Fuller*, 9 Kas. 176; *Powers v. Kindt*, 13 id. 74.)

The judgments in all the cases, except No. 3612, will be affirmed. The judgment in that case, *The State v. Teft*, will be reversed, and the cause remanded for a new trial.

All the Justices concurring.