## Weems *v.* The State of Georgia.

If the evidence on the trial of one indicted for adultery and fornication, though affording a strong presumption against him, is not sufficient to exclude every other reasonable hypothesis than that of his guilt, a conviction is not authorized.

February 24, 1890.

Criminal law. Adultery. Evidence. Verdict. Before Judge Smith. Muscogee superior court. November adjourned term, 1888.

Weems was indicted for adultery and fornication. The testimony of Cox, the prosecutor, was as follows: Was married to his present wife about eleven years ago; had been married twice before; has a daughter about twelve years old by a former wife. Present wife is twenty-six or twenty-seven years old. Moved to Columbus about fourteen months ago. Soon became acquainted with Weems. Had two rooms, one for shoe-shop, the other for bedroom. Early in October, Weems bought adjoining store; was a single man, and kept a restaurant. Witness introduced him to wife, and got her to cook his meals for him. Weems was on friendly and intimate terms with both of them, and had access

to their house as one of the family. In a short time witness began to suspect intimacy. Alley four or five feet wide separated store and house; Weems' back door was in full view of witness's window. On several occasions, from street and backyard, observed his wife at the window throwing kisses at Weems; they did not see him. One night, went out of Weems' store under the house, which was five feet from the ground, peeped through holes in the floor and saw his wife getting supper; then returned to the store, and soon Weems went into the yard and under the house, and came back with his coat covered with flour, which witness supposed wife had sifted through floor-crack, that she might know whether it was him or Weems. Remonstrated with her about her attentions to Weems and begged her to desist; but she said she would do as she pleased. She left the place where she was working, and over his protest went to another, as he supposed, to go to Weems' rooms, which were on her way there; she would get up before day, at the first bell, and go to factory over his protest. Made her quit cooking for Weems. Once told her if he ever caught them in any criminal act, he would kill them, and showed his pistol; shortly afterwards missed pistol and accused her of giving it to Weems, which she denied. Then went and borrowed Weems' pistol and kept it in his, witness's, house. Never told Weems of suspicions. Weems' back door creaked when opened, and when wife heard it, no matter what she was doing, she ran to her door to talk with him. Two or three days before December 21, 1888 (the day alleged in the indictment,) she was out in the yard picking up chips. Witness heard Weems' door creak, and slipped up to see what they were doing; heard Weems say, " Mrs. Cox, you have been rather offish with me for some time; what is the matter? have I done anything to offend you?" She replied, " No, but something is the matter, and at

some time when I can, I want to see you and tell you."
On the night of December 21, 1888, witness determined
to set a trap to catch them ; told wife he was going to
circus and wanted to take her and daughter. Wife
was especially fond of circuses, but declined to go ;
helped to get daughter ready. Witness took daugh-
ter into Weems' shop and asked him to go ; he
replied he could not go then, but would come later.
Took daughter to circus, put her in care of a friend,
and returned to backyard and got under house. Soon
saw wife come into yard and peep under Weems' door
and then return to her room. Mounted a box, peeped
in window and saw her undress and go to bed. Soon
afterwards, heard Weems close up and go to witness's
front door and knock; wife got up, ran to front door
and told him it was locked and he must go around to
back door. Weems did so, and witness followed closely
enough to have touched him ; saw him go into room
where wife was. Witness stopped at entrance of inner
door from two to five minutes, and heard wife say,
" There he is now, and I told you he would catch us."
Witness heard something like the bed shaking ; struck
one or two matches, and saw Weems leaning over wife
in bed ; he jumped up and appeared to be gathering his
coat together. Wife was not under cover, and her
clothing was partially up. Put pistol in Weems' face
and told him to stand still, or he would kill him. Called
Chinaman in next house to go for policeman, who soon
came and arrested Weems. There was enough light
thrown into the room from the Chinaman's house to
identify Weems ; the room had no shutters, blinds or
curtains. Witness did not recollect that he testified on
the preliminary trial of this case before a justice, in re-
sponse to a question as to whether he had seen any
criminal intimacy between his wife and Weems on the
night in question, that he had not, for he had followed

Weems too closely on his entering the house for him to have done so on that occasion.

The arresting policeman testified that when he arrived (half past eight or nine o'clock), Mrs. Cox was in bed covered up, and Cox was standing near the door with pistol drawn on Weems, who was standing about two feet from the front of the bed, hat on, overcoat buttoned up, right hand in overcoat pocket and left fingers holding cigar; did not notice whether it was lighted or partially consumed or not. Also that at the preliminary trial, Cox testified that he followed Weems immediately into the room and struck the matches on entering; he did not testify that he stopped at the inner door and heard something like a bed shaking, but did testify to the effect that he followed too closely for Weems and wife to have had criminal intercourse that night. This was the account of his testimony given by the chief of police and the justice who presided at the preliminary trial.

Mrs. Cox testified as follows: Worked in the factory for the last five months; had to work or starve, as Cox spent all he made for drink or gambling. Daughter was in the house all the time, as well as customers and other shoemakers in the shoe-shop. Cox grew jealous of Weems and forbade her cooking for or speaking to him. When he borrowed Weems' pistol, he said he would kill them both with that. Once or twice witness rose at the first ringing of the factory bell and went to work, and Cox accused her of going to Weems' room, which was on her way there; she did not know where Weems roomed, and had never been in his bedroom. When in the yard picking up chips, Weems asked her what he had done, as she appeared to avoid him; she replied she could not tell him then, but had something to tell him at the first opportunity. Declined to go to circus because not feeling well; went into the backyard

to attend to something, and saw from the light under Weems' door-sill that he had not gone, and expected he would call to ascertain what she had promised to tell him; he did not come, and she retired about nine o'clock; soon afterwards heard knock on front door, and told knocker to come to back door as front door was locked. Was in bed at the time; never left it nor went to door, but called to person to come around to back door. Soon Weems entered back door into her bedroom and remarked, " Why, you have gone to bed." She replied, "Yes, I waited till I thought you were not coming, and I have retired; I wanted to tell you that Mr. Cox accused me of stealing his pistol and giving it to you, and that he is going to kill us both; and there he is now." At that instant Cox covered Weems with pistol and threatened to kill him if he moved. Weems started to door, and said he was only there by request of wife and not aware she was in bed. He never came within two feet of bed except when Cox pushed him with pistol in face. He had on overcoat buttoned up, right hand in overcoat pocket and lighted cigar in left, and stood there till policeman arrived. Witness was under the cover all the time he was in room, which he and Cox entered almost at the same time. The street electric light and Chinaman's light were sufficient to identify persons and their dress. Never had any illicit intercourse with Weems at that or any other time; he always treated her with greatest respect and propriety, and seemed to be astonished at finding her in bed. Never threw any kisses at him.—The prisoner's statement agreed with Mrs. Cox's testimony; and he added that he did not go to her room with intent to have illicit intercourse, as her demeanor, so far as he had seen, had always been that of a perfect lady.

Cox, reintroduced, testified that when Weems was first caught in the room, he cried and begged to be let

out, and for his old mother's sake not to be disgraced, offering to give witness everything in his store. Mrs. Cox and the arresting policeman testified to the contrary, and said that Weems appeared cool and collected and patient.

THOMAS & McLESTER and McNEILL & LEVY, for plaintiff in error, cited 20 *Ga.* 438; 38 *Ga.* 295; 22 *Ga.* 212, 235; 44 *Ga.* 450; Hopk. Pen. L. §§479, 487.

A. A. CARSON, solicitor-general, by C. J. THORNTON, for the State.

BLANDFORD, Justice.

The plaintiff in error was indicted and found guilty of the offence of fornication and adultery. A motion for a new trial was made upon the ground that the verdict of the jury was contrary to evidence, without evidence to support it, and contrary to law. The court refused to grant the motion for a new trial, and this judgment is excepted to, and the plaintiff in error here says that the same was error.

We are of the opinion that the evidence in the case affords strong presumption against the defendant in the court below. Yet we do not think it sufficiently strong as to exclude from the minds of the jury every other reasonable hypothesis as to the defendant's guilt. We do not think the State made such a case under this rule of evidence as to authorize the conviction of the plaintiff in error. Hence, we think the court committed error in refusing to grant a new trial.

*Judgment reversed.*