KAHN *v.* THE CITY OF MACON.

Quietly playing and betting for money at a game of cards in a private room, although the room be situated over a bar-room and the gaming be done on the Sabbath morning, while an offense against the penal laws of this State, is not "disorderly conduct" as against the municipal ordinances of the city of Macon, it not appearing that the offense was in any sense publicly committed, that the public was in any manner disturbed thereby or even had any knowledge of the same until the participants in the game were discovered and detected by the police officers who made a "raid" upon the

room for that purpose. It was the duty of the officers to enter the room for the purpose of suppressing the offense and arresting the offenders, and it was the duty of the recorder when one of them was brought before him to bind such offender over to the State court for the offense of gaming; but the recorder had no authority, under the facts stated, to impose a fine as for a violation of any municipal ordinance of that city.

February 27, 1895.

*Certiorari.* Before Judge BARTLETT. Bibb superior court. November term, 1893.

E. A. COHEN, for plaintiff in error.

MINTER WIMBERLY, *contra.*

SIMMONS, Chief Justice.

Kahn was tried before the recorder of Macon for disorderly conduct and gambling. He was fined $25, and was bound over on the charge of gambling. He took the case by *certiorari* to the superior court, where the *certiorari* was dismissed, and to this ruling he excepted.

The testimony before the recorder was: About 2:30 A.M., Sunday, March 5, 1892, the chief of police of Macon, having been informed that there was gambling going on over a certain bar-room in that city, took with him some officers for the purpose of "raiding" the place. The door was opened by one of the officers with a false key. The defendant was present. There was a card-table in the room on which were chips and cards, and some other men in the room were jumping up and leaving the table when the chief of police entered. During the night card-playing for money had been going on, and the defendant had participated in the game. The defendant introduced no testimony, but took the position that if there was proof of any offense, it was that of gambling, which is a State offense, and therefore the recorder had no jurisdiction in the matter except to bind the defendant over, and no right to impose a punishment for the offense as proven. Whereupon the recorder cited section 372 of the code of the city, as follows: "Any per-

son who shall be found in the streets drunk, acting in a disorderly, riotous, tumultuous manner, or who shall be guilty of an act against the public safety, morality and decency, not herein specified, shall be arrested by the officer of the police force and confined in the city prison, until such time as he can be brought before the recorder to be dealt with as he may see proper." The recorder, under this section, imposed a fine and bound the defendant over, as above mentioned. In his answer to the *certiorari* the recorder stated, that the charge being "gambling and disorderly conduct," petitioner could be fined for the disorderly conduct and committed for the gambling; and that he was guilty of disorderly conduct, because he was engaged at the time of his arrest in violating the penal statutes of the State, and was one of an assembly of persons on the Sabbath day where gambling was carried on.

Under the facts stated, the plaintiff in error was properly arrested and bound over to the State court, authority to make arrests and bind over in such cases being granted in the city charter (Acts 1893, p. 240, §§59, 74); but the recorder had no authority to impose a fine as for a violation of the municipal ordinance above quoted. Where an act is punishable under a general law of the State, a municipal corporation cannot punish for it as an offense against the municipality, unless there is an express legislative grant of authority so to do. "The legislative intention that this may be done ought to be manifest and unmistakable, or the power in the corporation should be held not to exist." 1 Dillon, Munic. Corp. 4 ed. §368; *Mayor etc. of Savannah* v. *Hussey*, 21 *Ga.* 80; *Jenkins* v. *Mayor etc. of Thomasville*, 35 *Ga.* 147; *Vason* v. *City of Augusta*, 38 *Ga.* 542; *Reich* v. *The State*, 53 *Ga.* 73; *Rothschild* v. *City of Darien*, 69 *Ga.* 503; and see opinion in *Hood* v. *Von Glahn*, 88 *Ga.* 409. Such authority will not be implied from the "general wel-

fare clause" in a municipal charter, or the grant of power, in general terms, to punish for offenses against the peace, good order, morality and decency of the community; and an ordinance providing in such terms for the exercise of this power is not to be construed as applying to acts penal under the law of the State. (See cases cited *supra.*)

There is no provision of the charter of Macon which expressly authorizes the recorder to impose a punishment for gambling; nor was it contended that it could be punished as an offense against the municipality, under that name; but it was claimed that the act in question was "disorderly conduct," and under the ordinance referred to, could be punished as such. The claim that it was "disorderly conduct," however, rested wholly upon the fact that it was gambling, a violation of the penal law of the State; and this fact, as we have shown, so far from being a reason why the corporation could punish for it as disorderly conduct, was a reason why the act could not be dealt with at all as an offense against the municipality. The case differs from those of *McRea* v. *Mayor etc. of Americus,* 59 *Ga.* 168, and *Karwisch* v. *Mayor etc. of Atlanta,* 44 *Ga.* 404, relied on by counsel for the defendant in error. In the present case, so far as appears from the record, there was no disturbance of the public; the playing was carried on quietly, and not in any sense publicly. Although the room in which it was conducted was situated over a bar-room, it does not appear that there was any communication between the two places. There was nothing independently of the fact that it was gambling which would render the conduct in question an offense of any kind.

It follows from what we have said, that the court below erred in dismissing the *certiorari.*

*Judgment reversed.*