## TERRITORY OF HAWAII v. L. L. McCANDLESS AND JAMES ARMSTRONG.

EXCEPTIONS FROM CIRCUIT COURT, FIRST CIRCUIT.

ARGUED FEBRUARY 10, 1908.          DECIDED MARCH 2, 1908.

HARTWELL, C.J., WILDER AND BALLOU, JJ.

COUNTIES—*power to duplicate territorial legislation.*

> Under legislative authority to regulate all local police, sanitary and other regulations not in conflict with the general laws of the Territory, a county has no power to prohibit by ordinance an act already made penal by territorial statute.

ID.—*ordinance held void.*

> Ordinance 9 of the county of Oahu, relating to gutters on awnings, is void as conflicting with R. L. Sec. 959 covering the same subject.

### OPINION OF THE COURT BY HARTWELL, C.J.

The defendants were charged before the district court of Honolulu with violating Sec. 1 of the ordinance of the county of Oahu made August 28, 1907, entitled "Order No. 9 regulating the construction and maintenance of awnings, shades and balconies within the fire limits of Honolulu," by maintaining an awning between the 1st and 23d days of October, 1907, not constructed of cloth or canvas, extending over a part of a public sidewalk, on their building at the makai Waikiki corner of River and King streets, within the fire limits of Honolulu as defined in Sec. 956 R. L., without a gutter on the awning to conduct water to the outer line of the sidewalk.

It was agreed that the defendants owned the building and maintained the awning which projected over the sidewalk and had no gutter, and that the building was erected by the defendants in October, 1906, according to plans and specifications approved by the superintendent of public works, which required

no gutters on the awnings, and that the ordinance was in force at the time mentioned in the charge.

The defendants demurred to the charge on the following grounds:

"1.   That no offense under the laws of the Territory of Hawaii is set forth or alleged in said charge.

"2.   That said ordinance, known as Order No. 9, of the County of Oahu, is null and void in that: (a) It is unreason-, able.   (b) It involves illegal discriminations against owners of awnings constructed of materials other than cloth or canvas. (c) It involves illegal discriminations against owners of awnings within the fire limits of Honolulu."

The demurrer being overruled the defendants were sentenced to a fine of $10 each and $2.50 costs.   On appeal to the circuit court the demurrer was again overruled and upon the facts agreed a sentence of $10 each and costs was again imposed. The defendants excepted to the rulings as contrary to the law and the evidence.

Under the first ground of the demurrer the defendants' argument is that the power given by the legislature to boards of county supervisors under Sec. 62, County Act, to "regulate by ordinance all local police, sanitary and other regulations not in conflict with the general laws of the Territory," does not authorize the ordinance in question the subject of which is already covered by a territorial statute.   The ordinance provides as follows:

"Section I.   No person shall construct or cause to be constructed or maintain or cause to be maintained any awning, shade or balcony extending over any part of any public sidewalk, on any building within the fire limits of Honolulu as defined in Section 956 of the Revised Laws of Hawaii, without a gutter thereon to conduct the water to the building and a pipe to conduct such water to the outer line of the sidewalk so constructed and in such condition as not to permit water to accumulate and stand therein or to obstruct or interfere with public traffic upon such sidewalk;

"Provided, however, that the provisions of this ordinance shall not apply to cloth or canvass awnings or shades.

"Section II.   Any person violating any provision of this ordinance shall, upon conviction, be fined in a sum not exceeding Three Hundred Dollars ($300.00).

"Section III.   The continuance of any such violation after conviction shall be deemed a new offense for each day on which the same is so continued.

"Section IV.   This ordinance shall take effect from and after its publication."

The statute (Sec. 959 R. L.) provides as follows:

"No person owning or occupying any building fronting on any street, lane, alley or place within the fire limits of Honolulu, shall construct or cause to be constructed or maintained any awning, shade or balcony, except in accordance with the following provisions: such awning, shade or balcony should be securely supported on wrought iron brackets built into the walls, and shall be supported without posts, and shall be not less than eleven feet above the line of the curb levels of the sidewalk, and shall have a gutter formed to carry off the water to the line of the building, and from thence to the street gutter; provided, that no gutters will be required to be constructed on cloth or canvass awnings or shades; also, provided, that the height of all movable canvass or cloth awnings or shades, hereafter constructed, shall not be less than seven and a half feet above the line of the curb level or the sidewalk. · No awning, shade or balcony shall extend beyond the line of the curb.   No awning, shade or balcony shall be inclosed to a greater height than three feet six inches; provided, that no awning, shade or balcony shall be erected on any building facing on any street, lane, alley or place which is thirty feet or less in width; and no awning, shade or balcony shall be constructed on the sides or rear of any building within the fire limits unless there is a clear space of not less than thirty feet between such building and the adjacent buildings, and then they shall be constructed of fireproof materials."

By Sec. 962 the penalty for violating the provisions of this section is a fine of not more than five hundred dollars and each day's violation after conviction is made a new offense.

The plaintiff claims that no conflict exists between the ordinance and the territorial statute and that by the large preponderance of decisions elsewhere general laws and municipal ordi-

nances upon the same subject may coexist. The defendants, while admitting that the contention is supported by a large number, if not by the majority, of decisions, submit that, "The cases holding the contrary view, though fewer in number, are better considered, and more truly founded on principle. * * * The logic of these considerations seems to show irresistibly that to permit the same act to be punished under the general law and under an ordinance must either lead to a violation of the constitution or must cause an election to be made between the two methods of procedure, so that in case the act is punished under one provision the other becomes inoperative and void. This would produce an anomalous condition of criminal procedure in such cases that could hardly have been contemplated either by the legislature or the city council." 1 Smith, Municipal Corporations, Sec. 524. The following is a similar statement concerning the decisions:

"The general doctrine is supported by the weight of judicial authority that, an act may be made a penal offense under the statutes of the state, and that farther penalties may be imposed for its commission or omission by municipal ordinance. But to authorize such ordinance the local corporation must possess sufficient charter power and such power must be exercised in the manner conferred and consistent with the constitution and laws of the state. The cases present some discord respecting the nature of the grant of power necessary to sustain such additional regulations. The question of power seems to be the chief source of conflict." McQuillin, Municipal Ordinances, Sec. 500.

Many of the cases cited in support of the foregoing statements, as well as the statements, have confused two distinct questions. (1) Has the county power to pass an ordinance punishing an offense already punishable under state laws, and (2) can a man constitutionally be punished twice for an offense made penal by the county and the state?

The first question is merely one of statutory construction. The second is one of constitutional law.

The first question may arise under three possible circumstances: (a) Express grant to the county to legislate upon some subject already covered by state laws; (b) the governing statute silent upon this subject leaving it to be decided on general principles, and (c) limitation in the governing statute to ordinances not in conflict with general laws.

Under class A there would be no doubt of the validity of the ordinances so far as statutory construction goes, but there might be just as much diversity of opinion whether a particular offender could constitutionally be punished twice for the same act. It is on this question that there is the greatest conflict of authority. The weight of authority supported by Cooley (Const. Lim. 279) is that the offender can be punished twice without infringing the constitution, the minority and best reasoned opinion is that he cannot, but these cases divide again into two classes (a) those which assume that the county ordinance is valid and therefore sustain the plea of former conviction, and (b) those which assume that the county ordinance is void, not upon statutory construction for that is clear upon the hypothesis, but upon the ground that the grant of legislative power to the county to enact a penal law covering the same ground tends to put a man in jeopardy twice contrary to the constitution. The reasoning in this last class of cases is unsound, as the legislative power given to the county to make penal the same offense has nothing to do with the question whether one who is convicted under one law may successfully plead former conviction when tried for violation of the other law.

To put the distinction another way, it would be possible in two jurisdictions, both of which conceded that the county had power to enact the law in question, that there might be a difference upon the constitutional question whether an offender could be punished twice for the offense or whether one conviction would be a bar to the other. This shows that the question is not the same.

The authorities are confusing because they do not keep these questions distinct. The citation from Smith, Municipal Corporations, Sec. 524, relates merely to the constitutional question whether the same act may be punished under the general law and under an ordinance which is entirely distinct from the question whether there was power to pass the ordinance. Of the minority cases cited as holding that this would result in double jeopardy, *State v. Keith,* 94 N. C. 933, proceeds on the assumption that the ordinance is void, while *State v. Cowan,* 29 Mo. 330, reached the same result on the assumption that the county act was valid. This again illustrates the difference between the question of statutory power and the constitutional question.

In the same way McQuillin, Sec. 500, seems to be dealing with the constitutional question. The question in this case is not whether an act may be made a penal offense under the statute of the state and that further penalties may be imposed by ordinance, the question is what the legislature has done and not what it may constitutionally do. That question is treated in a preceding section, in which McQuillin says, "Under the usual grant of municipal powers which in general terms includes the authority to enact all necessary ordinances to preserve the peace and advance the local government of the community the local corporation cannot provide by ordinance for the punishment of an act constituting a misdemeanor or crime by state statute." McQuillin, Sec. 499.

And so Cooley, Constitutional Limitations, 279, supra, discusses the constitutional question whether "further penalties under proper legislative authority *may be* imposed by municipal by-laws." The question in this case is not what may constitutionally be done under proper legislative authority, but whether there is any proper legislative authority in this particular case. The same remark applies to the Alabama case cited in Cooley.

In Georgia municipal corporations cannot legislate upon subjects covered by state laws unless expressly authorized. *Kahn v. Macon,* 95 Ga. 419 (22 S. E. 641). *Moran v. City of Atlanta,* 102 Ga. 240 (30 S. E. 298), is in point, and contains the following quotation: "A general grant of power, such as mere authority to make by-laws or authority to make by-laws for the good government of the place and the like, should not be held to confer authority upon the corporation to make an ordinance punishing an act, for example, an assault and battery, which is made punishable as a criminal offense by the laws of the state." 1 Dillon, Mun. Corp. Sec. 368.

*In re Sic,* 73 Cal. 142, is directly in point upon the validity of an ordinance under Sec. 11, Art. 11 of the California ·constitution which authorizes cities and towns "to pass and enforce within their limits such local police, sanitary and other regulations as do not conflict with general laws." The defendant was arrested for violation of the ordinance. As he had not been previously arrested for violation of the state law there was no constitutional question of double jeopardy involved. The only question was the validity of the ordinance under the above cited provision of the constitution. The court decided on the authority of Bishop and Dillon that this was not a sufficient grant of power, and that the ordinance was invalid. This decision seems right. But the court drifts into a constitutional discussion which seems wholly unnecessary. It assumes that if it held the ordinance valid a man could be punished twice for the same offense. This does not necessarily follow, because, while this is held by Cooley, a large number of courts hold that where an ordinance is valid, and *because* it is valid, a conviction under it may be pleaded as a bar to the prosecution under the state laws. Discussion of the constitutional question, where none was involved, was not material to the decision.

In North Carolina general power to enact ordinances does not authorize ordinances covering state offenses. *State v. Lang-*

*ston,* 88 N. C. 692; *State v. Brittain,* 89 Ib. 576; *State v. Keith,* 94 Ib. 933. It appears that the Indiana and Missouri cases cited as supporting the general doctrine above mentioned are made under statutes expressly authorizing "ordinances regulating subjects, matters and things upon which there is a general law of the state, unless, otherwise prescribed or authorized by some special provision of its charter," or providing "that whenever any act is made a public offense against the state by any statute and the punishment prescribed therefor such act shall not be made punishable by any ordinance of any incorporated city or town." *Whiting v. Doob,* 152 Ind. 157, and McQuillin, supra, Secs. 505, 507.

Since a county derives its authority from the legislature it ought not to be inferred, in the absence of clearly expressed terms in the act under which the county is organized, that the legislature has delegated to counties the power to legislate concerning their local affairs in such way as to supersede territorial laws or render them unnecessary. In order to come within the grant of legislative power given by the county act to boards of county supervisors ordinances should be reasonably required for the purpose of administering the local police and sanitary affairs of the county and this cannot be said of an ordinance, like that in question, made for a purpose fully provided for by the laws of the Territory. It is not enough that ordinances regulating local police and sanitary matters shall not be in conflict with the general laws. If they undertake to penalize acts already made penal by territorial law they should be authorized expressly or by necessary implication.

The question presented in this case is not whether the defendants have been convicted or acquitted on a charge of violating the territorial law about awnings but whether, while that law is in full force, counties can lawfully provide by ordinance a method for accomplishing the same object. There are grave objections to duplicating by county ordinances the penal laws of the Territory. Not only are persons made liable thereby

to be prosecuted both by the county and the Territory, one subordinate to the other, for the same act, but public harm would often result either from conflict between the two jurisdictions or from uncertainty as to which ought to assert itself and which should await the action of the other.

*Landis v. Borough of Vineland,* 54 N. J. L. 75 (23 Atl. 357), cited in Smith, Sec. 521, holds that a difference in penalty such as exists here renders a city ordinance in conflict with a state law. The two North Carolina cases of *Washington v. Hammond,* 76 N. C. 33, and *State v. Langston,* 88 N. C. 692, also refer to the difference in penalty as creating a conflict.

We held in *County of Oahu v. Whitney,* 17 Haw. 174, 181, that "on the whole we are of the opinion that the legislature could delegate to the county boards of supervisors power to make ordinances relating to certain matters of local concern," as in cases of municipal corporations proper in which the exception to the rule that delegated power cannot be delegated "arises by implication from the immemorial practice which has recognized the propriety of vesting in municipal organizations certain powers of local regulation over matters in which the persons interested within such organizations are specially interested and in regard to which they are supposed to be especially competent to judge" (p. 178). While construing the county act to accord with the spirit and intent of Sec. 56 Org. Act, authorizing the legislature to "provide for the government" of as well as to "create counties and town and city municipalities," it is proper that the conditions under which the county system was established should be borne in mind and due significance attached to the fact that its establishment was neither coincident, as was the case in the other territories, with the establishment of a general system of laws, nor, as in cases of towns and cities in the older states and in England, did the quasi municipal county system antedate or grow up with a general system of laws. It is undesirable to extend powers of counties so as to duplicate unnecessarily the laws of

the Territory.   Unnecessary expense and conflicts of jurisdiction are to be avoided.   Although power is given to counties to "open, construct, maintain and close up public streets" (p. 49 S. L. 1905), the fee in the streets remains as it was before the county act was passed and is not in the counties. This may well be considered a reason why the act should not be regarded as giving power to enact ordinances either duplicating the general law relating to streets, or, as in this case, making the same provision but reducing the maximum penalty from $500 to $300.   The ordinance is not required for control over local affairs and in its operation would tend to conflict, as above pointed out, with the territorial law.

Upon the foregoing considerations we hold that the ordinance is not authorized by law and therefore is null and void.

Exceptions sustained, judgment vacated.

*W. L. Whitney,* Deputy Attorney General, for the Territory.
*A. G. M. Robertson* for defendants.