## 6128.  GARVIN *v.* MAYOR AND COUNCIL OF WAYNES-BORO.

1. It is not always essential that noise or disorder should disturb more than one person, to constitute a violation of a city ordinance making it an offense to "make any unnecessary noise calculated to disturb the peace and good order of the city, or otherwise act in a disorderly manner

2. The evidence in behalf of the city, though somewhat weak and unsatisfactory, was sufficient to uphold the conviction.

DECIDED JANUARY 20. 1915.

Certiorari; from Burke superior court—Judge Sheppard presiding. October 6, 1914.

*C. B. Garlick,* for plaintiff in error. *H. J. Fullbright,* contra.

WADE, J. The plaintiff in error was tried in the police court of the city of Waynesboro for the violation of a city ordinance, which declares that "any person or persons who shall use loud, boisterous, or obscene language, or who shall fight, quarrel, make any unnecessary noise calculated to disturb the peace and good order of the city, or otherwise act in a disorderly manner, shall upon conviction be punished as provided in section 62 of these ordinances." From the judgment of the mayor finding her guilty she appealed to the superior court by petition for certiorari, and to the order overruling the certiorari she excepts. It appears from the record that on a certain night in April, 1913, a Mrs. Strother, who operated a restaurant in connection with sleeping-rooms on a street in the city of Waynesboro, sent for a policeman and complained to him that she thought there was a negro woman in the room occupied by a Mr. Nolls, one of her boarders, and explained that she thought this "because she heard loud talking in the room and noise of the bed." The policeman went to the room and found two negro women with Mr. Nolls. There was no light in the room when he entered, and Nolls was in his night-clothes, but neither woman was undressed. One of them was sitting in a chair and the other was standing, and when the policeman entered they told him they were there to bring some clothes to Mr. Nolls, which one of them had washed for him, and stated that they had remained so long because Nolls got one of them to sew a button on his pants. The husband of the woman who made the complaint testified that he was at the time in a room adjoining the room occupied by Nolls, and heard no noise whatever in there, and that he would not have known that there was any one in there if his wife had not told him so. The defendant stated that she accompanied another negro woman to the room of Nolls, on the night in question, where this other woman was going to deliver to Mr. Nolls some clothes, and that while they two were in the room of Nolls he asked the washerwoman to sew some buttons on his pants, and this she did, and that nothing disorderly or immoral occurred while the two women were there, and no noise was made and "no one could have been disturbed." This was all the evidence.

The plaintiff in error insists that the conviction in the mayor's court was unlawful because the evidence does not disclose that there was any disorder, and, while the inference might possibly be drawn that acts of immorality were committed, there was no disturbance to the public or to any individual. His counsel relies upon the case of *Kahn* v. *Macon,* 95 *Ga.* 419 (22 S. E. 641), where the Supreme Court held that "quietly playing and betting for money at a game of cards in a private room, although the room be situated over a barroom and the gaming be done on the Sabbath morning, while an offense against the penal laws of this State, is not 'disorderly conduct' as against the municipal ordinances of the city of Macon, it not appearing that the offense was in any sense publicly committed, that the public was in any manner disturbed thereby, or even had any knowledge of the same until the participants in the game were discovered and detected by the police officers who made a 'raid' upon the room for that purpose." It will be seen that it did not appear from the record in that case that the public was in any manner disturbed by the conduct of the defendant, or in fact that *any one* outside of those present in the room where the game was going on had any knowledge that the defendant and his associates were even present in the room in question, until the police officers entered. So, also, the record in that case discloses that the ordinance under which the defendant was prosecuted was quite different from the ordinance in the present case, as that ordinance provided that "any person who shall be found *in the streets,* acting in a disorderly, riotous, tumultuous manner, or who shall be guilty of any act against the public safety, morality and decency, not herein specified, shall be arrested," etc. Of course, under that ordinance the recorder had no authority to impose a fine upon any offender who might be "guilty of an act against the public safety, morality, and decency" not specified, if the particular offense which the defendant committed was one punishable under a general law of the State; and hence the conviction of that defendant under a charge of "disorderly conduct" could not be sustained where it appeared from the testimony that the defendant had not been "found in the streets" acting in a disorderly manner, but had simply been gambling in violation of the State law, quietly, without disturbing any one and without the knowledge of any person until the policemen entered the room. In the present

case the ordinance appears to be broader, and includes within its scope not only the use of loud, boisterous, or obscene language, etc., *anywhere* within the city limits, but the making of "any unnecessary noise calculated to disturb the peace and good order of the city," or acting in a disorderly manner "otherwise;" the term "or otherwise," etc., receiving an ejusdem generis interpretation. *Fleming* v. *Rome,* 130 *Ga.* 383, 386 (61 S. E. 5).

 · Apparently the term "disorderly conduct" is one of rather nebulous and uncertain meaning, since it has been variously defined in different jurisdictions, and no definition of such precision is generally accepted as that it may always be readily determined whether particular conduct is or is not disorderly.  One who commits a breach of the peace is of course guilty of disorderly conduct, but not all disorderly conduct is necessarily a breach of the peace,—as where it is merely calculated to disturb or annoy.  Mt. Sterling *v.* Holly, 108 Ky. 621 (57 S. W. 491).  Among acts which have been held to constitute disorderly conduct are: making noises, exclamations, and outcries in the public street, by which people are drawn together and the highway obstructed (Commonwealth *v.* Spratt, 14 Phila. (Pa.) 365); revelling or behaving in a boisterous manner (In re Began, 12 R. I. 309); calling a non-union workman a scab during a period of public excitement (Commonwealth *v.* Redshaw, 2 Pa. Dist. 96, 12 Pa. Co. Ct. 91); riotously raising a pole in a public street (Commonwealth *v.* Morrison, Add. (Pa.) 274); exhibiting an effigy calculated to provoke a breach of the peace (Commonwealth *v.* Haines, 4 Pa. L. J. Rep. 17, 6 Pa. L. J. 239); depositing an irritant substance so that one may apply it to his person (People *v.* Blake, 1 Wheel. Cr. Cases (N. Y.) 490); purposely driving a heavily loaded wagon over a water-hose in use by firemen at a fire (Commonwealth *v.* Moore, 21 Pa. Co. Ct. 321); and even the act of an innkeeper in refusing to entertain a traveler (4 Blackst. Comm. 168).  As was said in *Sheppard* v. *City of Jackson,* 11 *Ga. App.* 811-812 (11 S. E. 367), "we recognize, of course, that the expression 'disorderly conduct' would include a variety of acts, and generally it would be a question for the magistrate to say whether or not the particular act complained of was comprehended within the expression 'disorderly conduct.'  .  .  Generally, 'disorderly conduct' means some act which tends to a breach of the peace, or at least to disturb that portion of the public which may

see or hear the conduct claimed to have been disorderly." Equally varied have been the definitions applied to the term "disorderly person." So far as we can gather from the decisions by courts of last resort in this State, the term "disorderly conduct" as used in a municipal ordinance, where its limitations are not expressly declared by the ordinance, has been held to include not only violent or boisterous conduct calculated to disturb the peace and quiet of an entire community, but also loud, boisterous, or offensive conduct which affects the peace and quiet of the person or persons who witness the same and who may be disturbed thereby. In other words, a single resident or person in a community is entitled to the full protection of the law in preserving him from any unnecessary and annoying destruction of that quietude which he has the right to enjoy. In *Daniel* v. *Mayor &c. of Athens*, 110 *Ga.* 289 (34 S. E. 1016), the Supreme Court held that "The use, in the presence of a man, of an obscene word in an ordinary tone, without anger, and under circumstances not calculated to offend the hearer or cause a breach of the peace, does not constitute a violation of a municipal ordinance prohibiting disorderly conduct 'calculated to disturb the peace of the citizen.'" This would indicate that if the obscene word should be used in the presence of one in a loud or unusual tone and in an angry manner, and under circumstances calculated to offend the hearer or cause a breach of the peace, the offense of disorderly conduct would be complete under such an ordinance.

In *Fountain* v. *Fitzgerald*, 2 *Ga. App.* 713-716 (58 S. E. 1129), Judge Russell said: "Whether a gun or stick was used, the intimidation of a citizen [*one* citizen] in the peace of the State, by the defendant, would properly come within the definition of 'disorderly conduct.'" In *Douthit* v. *City of Blue Ridge*, 13 *Ga. App.* 645 (79 S. E. 744), where the evidence showed that certain men and women were heard by a town marshal talking in a loud tone in the woods near a residence, and others also heard the talking and laughing, but there was no evidence of any improper conduct on the part of the defendant, and it did not appear that *any single person was disturbed*, it was held that the evidence was not sufficient to sustain a conviction under an ordinance prohibiting any person from disturbing the peace, quiet, and good order of the city by loud and boisterous language, or by otherwise acting in a disorderly

manner tending to disturb the quiet and peace of the residents of the city, etc. And in the case of *Kahn* v. *Macon,* supra, it will be remembered, as we have already suggested, that the proof showed absolutely no disturbance of the peace and quiet *of any single citizen* up to the time the policemen entered the room where the defendant was quietly engaged in gambling in violation of the State law. The ordinance of force in the city of Waynesboro, as we have already suggested, declares that no person or persons "shall use loud, boisterous, or obscene language, *or* . . shall fight, quarrel, make any unnecessary noise calculated to disturb the peace and good order of the city, or otherwise act in a disorderly manner." It does not expressly provide that the loud, boisterous, or obscene language, or the unnecessary noise which the ordinance prohibts, shall be punished if the use of such language or the making of such unnecessary noises may happen to be heard by a single person only, or by any named number of persons, but the offense consists of the use of such language or the making of such noises as would in their nature be "calculated" to disturb the peace and good order of the city. Suppose one should, without any right or reason for such conduct, make an alarm, at a dead hour of the night, at the door of a house situated within the corporate limits of a town or city and occupied alone by a respectable female, and his assault on her door, calculated to arouse her gravest apprehensions and to excite her wildest fears, should be heard only by her, could it be said that, since the peace and quiet of only one person was disturbed by his conduct, such behavior would not constitute "disorderly conduct," within the meaning of a municipal ordinance similar to the one under discussion, and especially when it is considered that such conduct would be "calculated" to disturb the peace of the immediate neighborhood if the excited female should give tongue to her terror? It has been held that "the peace of a city" may be disturbed by calling a man "a damn fool and a bastard." Topeka *v.* Heitman, 47 Kan. 739 (82 Pac. 1096). And it has been held that outcries in a public street constitute an indictable nuisance, although but a single person is disturbed, if the other elements of the offense are present. Commonwealth *v.* Oaks, 113 Mass. 8.

It appears that Mrs. Strother was certainly disturbed by the loud talking of the defendant, and also by the "noise of the bed"

in the room occupied by Nolls—so much so that she thought it necessary to call in a policeman to suppress the disorder and to free her house from the presence of one or more negro women who were conducting themselves in a decidedly free and easy manner. A boarding-house should have the full protection of the law in the preservation of order and reasonable quietude, and while the proprietress may not be entitled to enjoy the same degree of privacy she would have in a merely private dwelling, she should nevertheless enjoy immunity from the presence of undesirable persons in the rooms of her lodgers at unseemly hours, and for a length of time calculated to bring the good repute of the house in question; and where a male boarder is visited at night by two negro women, who remain for an hour and a half, and whose conduct is sufficiently boisterous to excite the attention of the landlady, and upon investigation the boarder is discovered in the same room with the women, in the dark and in his night-clothes, the recorder, although, of course, he could not have inflicted punishment for the violation of the State law directed against sexual offenses, could punish for disorderly conduct under an ordinance as broad as the one of force in the city of Waynesboro; for it can not be reasonably doubted, under what we have said above, that the recorder was authorized to infer that the conduct complained of, and for which the defendant was found guilty, was sufficiently loud and boisterous to disturb Mrs. Strother, and perhaps others, notwithstanding it failed to disturb her husband; and that it was therefore calculated to disturb the peace and good order of the city. It seems to us that the "disorder" was of a most objectionable kind, and if the landlady could not be protected from such offensive behavior under the city ordinance against "disorderly conduct," she would be practically helpless and unable to preserve the reputation of her house for quiet and good order, and would soon be unable to attract desirable boarders or respectable custom, and would be thus deprived of her means of livelihood. Many acts of disorder not punishable under the State laws might not only have the effect of making a boarding-house undesirable to those seeking a temporary home or abiding place, but might even render the place an absolute nuisance to the locality where it is situated.

The excuse offered by the negro women to account for their presence might have been true, and they may have been innocent of any

violation of a State law, but, nevertheless, their presence, for the length of time shown by the record, in the room of a white man, and the loud talking and noise they made in the house of Mrs. Strother, disturbed *her,* and was also calculated to disturb the peace and good order of the city, since it is impossible to gauge the consequences which may have arisen from such unseemly conduct had the landlady seen fit at the time to acquaint the general public with her troubles, rather than to tell them to a policeman. The evidence was somewhat weak as to the amount of disturbance made by the defendant, but the recorder found the evidence sufficient, and the superior court judge approved the finding; and since, under our view of the record, there was some evidence to sustain the judgment rendered, we will not interfere with the result reached in the mayor's court.                         *Judgment affirmed.*

RUSSELL, C. J., dissenting. I have so much confidence in the judicial conclusions of my brother Wade, as well as in his discriminating research in the present case, that I have endeavored to agree to the result which has been reached by the majority of the court in this case. The volume of business before the court is so great as to debar me from elaborating my views, but I can not bring myself to the conclusion that the facts disclosed by the record show the plaintiff in error to be guilty of the municipal offense of disorderly conduct. Apparently there was a palpable and flagrant breach of the proprieties, and the circumstances are suggestive of a violation of a penal law of this State; but in my judgment the case is controlled as to the latter feature by the ruling of this court in *Cotton* v. *City of Atlanta,* 10 *Ga. App.* 379 (73 S. E. 683), and upon the merits the case is ruled by the decision of the Supreme Court in *Kahn* v. *City of Macon,* 95 *Ga.* 419 (22 S. E. 641). So far as I can see, the only disquieting feature disclosed by the record was an apprehension on the part of the prosecutrix that an act of fornication was being committed in her house. The law amply safeguards the peace and dignity of every home, but it is not necessary, for this purpose, to strain the law beyond the facts, or to invoke municipal authority to enforce the laws of the State.