23507. WILLIAMS *v.* CITY OF VALDOSTA.

Decided November 4, 1933.

*W. A. Morgan, W. E. Perry,* for plaintiff in error.
*Franklin & Langdale, H. C. Eberhardt,* contra.

GUERRY, J. Willie Pearl Williams was convicted in the recorder's court of the city of Valdosta, of the offense of "disorderly conduct," under a municipal ordinance as follows: "It shall be unlawful for any person to act in a violent, turbulent, boisterous, indecent, or disorderly manner, or to use profane, vulgar, or obscene language in the city, tending to disturb good order, peace, and dignity of said city." The petition for certiorari discloses that the evidence for the city shows that at about three o'clock in the morning the police office received a "mysterious call" to go to Willie Pearl Williams's house, "that a man would be found there;" no name being given as to who was calling. An officer was sent to the house, and when he knocked on the door the defendant came to the door in her night clothes and the policeman entered the house and found the bed in such a condition as to indicate that some one or more persons had been occupying it. Willie Pearl Williams was a negro woman. A white man, dressed only in his underclothes, was discovered in a closet in the room. He tried to prevent the policeman from opening the door to the closet, and gave as his excuse that he was there to buy whisky, and that he was waiting for the defendant's husband to come, to purchase the same. The court in its answer to the certiorari said: "Under this evidence I reached the conclusion that the defendant was guilty of an indecent act in occupying a room with a white man, in an almost nude condition, at that hour of the morning, and I imposed the fine or alternative sentence as stated. . . " We think the court erred in overruling the petition for certiorari. The evidence raises a most violent suspicion that a penal law of this State was violated, but we are not prepared to say that it shows a violation of the municipal ordinance quoted above. There is no evidence of any violent, boisterous, or turbulent acting. On the contrary, we are constrained to believe that the utmost quiet prevailed. The only part

of the ordinance which might be shown to have been violated is that of acting in an indecent manner. In 31 C. J. 415, "indecent acting" is defined as "that which the common sense of decency requires should be kept concealed or private." The publicity of an act is one of the requisites necessary to make it indecent. An act done in private may be decent while, the same act done in public or even before one person may be indecent. In *Kahn* v. *Macon*, 95 *Ga.* 419 (22 S. E. 641), it was said: "Quietly playing and betting for money at a game of cards in a private room, although the room be situated over a barroom and the gaming be done on the Sabbath morning, while an offense against the penal laws of this State, is not 'disorderly conduct' as against the municipal ordinances of the city of Macon, it not appearing that the offense was in any sense publicly committed, that the public was in any manner disturbed thereby or even had any knowledge of the same until the participants in the game were discovered and detected by the police officers who made a 'raid' upon the room for that purpose. . . The recorder had no authority, under the facts stated, to impose a fine as for a violation of any municipal ordinance of that city." The gaming in the *Kahn* case was a violation of the State law, as were the illegal sexual relations, if consummated, in the present case, and would have authorized the court to commit the offenders to the State court. In the *Kahn* case, supra, it was further said: "In the present case, so far as appears from the record, there was no disturbance of the public; the playing was carried on quietly, and not in any sense publicly. . . There was nothing independently of the fact that it was gambling which would render the conduct in question an offense of any kind." The present case is analogous. To be guilty of disorderly conduct, the public or some member thereof must be disturbed. In the case of Price *v.* Shreveport, 142 La. 946 (77 So. 883), it was said: "The learned trial judge erred in refusing to charge that it was beyond the power of the city to make fornication or adultery, of themselves, that is to say, disconnected with any circumstance of scandal or public disorder, . . a crime." In *Garvin* v. *Waynesboro*, 15 *Ga. App.* 633 (84 S. E. 90), it was held, in effect, that to constitute disorderly conduct there must be such a degree of publicity attached thereto as that some *one person*, other than the actors, is disturbed thereby. The circumstances, somewhat similar to those in the

present case, disclosed that the boarding-house keeper at whose house the conduct was occurring was disturbed thereby and that she caused the police to interfere. She was the *single person* disturbed other than the actors, as such a degree of publicity had attached thereto even as to a single person that the ordinance was made applicable. In that case, however, Russell, J., present Chief Justice of the Supreme Court of this State, filed a very vigorous dissent and said: "The law amply safeguards the peace and dignity of every home, but it is not necessary for this purpose to strain the law beyond the fact or to invoke municipal authority to enforce the laws of the State." We come, therefore, to the conclusion that the judge of the superior court erred in overruling the certiorari.

Judgment *reversed.* Broyles, C. J., and MacIntyre, J., concur.