City of Chicago, Appellee, v. Doris Murray, Appellant.

Gen. No. 43,975.

234

Opinion filed December 30, 1947. Released for publication January 28, 1948.

CASIMIR R. WACHOWSKI, of Chicago, for appellant.

BARNET HODES, Corporation Counsel, for appellee; L. LOUIS KARTON, Head of Appeals and Review Division and SYDNEY R. DREBIN, Assistant Corporation Counsel, of counsel.

MR. PRESIDING JUSTICE FRIEND delivered the opinion of the court.

The City of Chicago filed a complaint against Doris Murray charging her with a violation of chapter 193, section 1 of the Municipal Code of Chicago (1939), as amended, in that "she did make or aid in making an improper noise, riot, disturbance, breach of peace, or diversion tending to a breach of the peace, within the limits of the City." No evidence was adduced by defendant upon the hearing, but at the close of the city's case her counsel made a written motion to find her not guilty, which was denied, and she was thereupon found guilty and fined $200 and costs. This appeal was taken from the judgment entered on the finding.

There is substantially no dispute as to the facts. It appears that about 10:30 in the evening of May 27, 1946, Police Captain Jerome C. Looney received word that a man had been shot in room 841 of the Morrison Hotel. Upon his arrival at the room several minutes later he was met by the house officer of the hotel. On entering the room together they found Colonel Fletcher of the Canadian Army lying across the bed dead, clothed only in a bathrobe. The bed was mussed and had been used. The defendant, completely dressed,

and her husband Donald Murray, were also in the room. Upon inquiry by Captain Looney as to what had happened, Murray said, "I shot that man." In reply to Looney's question as to his motive, Murray said, "What would you do if you found your best friend in a room with your wife?" Events leading to the homicide clearly indicate that Murray had become suspicious of the relationship between Fletcher and defendant, had traced them to the Morrison Hotel room, and after gaining admission to the room and finding them in a compromising situation, shot and killed Fletcher.

The ordinance in question provides that "All persons who shall make, aid, countenance, or assist in making any improper noise, riot, disturbance, breach of the peace, or diversion tending to a breach of the peace, within the limits of the city . . . shall be deemed guilty of disorderly conduct, and upon conviction thereof, shall be severally fined. . . ." As the principal ground for reversal it is urged that "To constitute disorderly conduct under the ordinance, the act complained of must be attended with some degree of publicity so that some one person other than the actors is disturbed thereby or subjected thereto." Courts of review in New York, Louisiana and Georgia have held under similar codes or ordinances that acts charged as disorderly conduct must be public in character and such as actually tend to disturb the public peace and quiet. *People on Complaint of Neiman v. McWilliams,* 22 N. Y. S. (2d) 571. In *People v. Ludovici,* 13 N. Y. S. (2d) 88, the court said that to sustain a conviction for disorderly conduct under the penal law of that State " 'the conduct charged must at least be such that a breach of the peace has become imminent or might reasonably be expected or intended to flow from such conduct,' " quoting from *People on Complaint of White v. Monnier,* 280 N. Y. 77, 19 N. E. (2d) 789. In *People v. Reid,* 40 N. Y. S. (2d) 793, it was held to be

the settled law of New York (again quoting from *People v. Monnier*) " 'that acts charged as disorderly conduct must be public in character, and such as actually tend to disturb the public peace and quiet.' " See also *People v. Douglas,* 29 N. Y. S. (2d) 206. Similar conclusions were reached in *City of Shreveport v. Price,* 142 La. 936, 77 So. 883, and *Williams v. City of Valdosta,* 47 Ga. App. 810, 171 S. E. 553, both cases in which persons found in a hotel room or house of assignation, and charged with violating a so-called disorderly conduct ordinance, were held not guilty, where the evidence disclosed no disturbance of a public nature.

Decisions in several other States, cited by the city, are not entirely in accord with those of New York, Louisiana and Georgia. In *City of Seattle v. Franklin,* 191 Wash. 297, 70 Pac. (2d) 1049, defendant, a shoplifter, was charged with violating an ordinance which provided that "it shall be unlawful for any person to be guilty of . . . disorderly conduct, or of any conduct tending to disturb the public peace, . . . ." In that case the court sought to distinguish the New York and Georgia decisions by saying that the courts there failed to recognize the difference between disorderly conduct and conduct tending to disturb the public peace. Even in the *Franklin* case the court recognized that breach of the peace must be public, but was of opinion that disorderly conduct need not be so. Other cases cited by the city are not at all pertinent on the facts. The only Illinois case called to our attention where it was held that the mere fact of being disorderly would, of itself, not make one amenable to the ordinance, is *City of Chicago v. Confare,* 183 Ill. App. 148. The evidence there disclosed that defendant crawled under the canopy of an elevated station and was looking through the cracks of the station platform under women's clothes. The court held that the prosecution should have been brought under another section of the code.

The city concedes that defendant did not make any improper noise, riot or breach of the peace, but it is urged that her adulterous conduct was a "diversion tending to a breach of the peace" within the provisions of the ordinance, and the court evidently adopted that view. Counsel for the city argue that "this act was contrary to public morals and therefore disorderly conduct. The one person other than these two 'actors' who was disturbed by the acts of the defendant and Fletcher was the defendant's husband, Mr. Murray. He was so disturbed by the acts of the defendant and Fletcher that he killed Fletcher. . . . If the defendant had not held her marriage vows so lightly that she would remain in a hotel room for a period of approximately six hours, unclothed and with every circumstance pointing to an act of adultery, Murray would not have killed Fletcher." However reprehensible defendant's conduct may have been, we do not think she was guilty of violating the ordinance upon the theory that she aided in any "diversion tending to a breach of the peace." Under our Criminal Code adultery or fornication constitute a crime only when practiced openly. Ill. Rev. Stat. 1947, ch. 38, par. 46 [Jones Ill. Stats. Ann. 37.022]. The circumstances of this case would not justify prosecution under the Criminal Code. While defendant's conduct was contrary to public morals, we do not think it justified a finding that she was guilty of "disorderly conduct" or of a "diversion tending to a breach of the peace." Only the parties immediately concerned were disturbed thereby.

Since the essential facts are not disputed, it would serve no useful purpose to remand the case for retrial. Accordingly, the judgment of the municipal court is reversed.

*Judgment reversed.*

SCANLAN and SULLIVAN, JJ., concur.