## 18573.  COLEMAN *v.* THE STATE.

LUKE, J.  While the evidence, which is entirely circumstantial, raises a
grave suspicion of the defendant's guilt, it does not exclude every other
reasonable hypothesis than that of his guilt; and for this reason alone
the judgment overruling his motion for a new trial is reversed.

*Judgment reversed.  Broyles, C. J., concurs.  Bloodworth, J., dissents.*

DECIDED JANUARY 7, 1928.

Adultery and fornication; from Crisp superior court—Judge
Crum.  September 30, 1927.

Charley Coleman was convicted under an indictment which
charged him with having committed adultery and fornication with
Lessie Boyer.  From the evidence for the State it appears that on
a Saturday, shortly before midnight when the occupants of the
Dawkins home just outside the city limits of Cordele were away,
the defendant, a married man, went to that house in a car with
Lessie Boyer, an unmarried girl, nineteen years old, and they re-
mained in the house alone until Sunday afternoon about 4 o'clock.
A man working during the night and until 7 o'clock the next
morning at a coal chute near the Dawkins house and "in plain
view of the house" testified that there was no light in the house
when they entered and he did not see any light after they went in.
One of the Dawkins family, a boy, who had been told by this
man that they were in the house, testified that when he got back
there Sunday morning about 7 o'clock the door was fastened on
the inside, and that he knocked on it but got no response; that he
went back in a car in the afternoon, with others, but did not get
into the house until about 4 o'clock.  As to what occurred at that
time he testified: "I called Mr. Coleman and told him that he
would have to get out, and he said, 'Well.'  He finally opened the
door, and when we went in the house Charley Coleman and Lessie
Boyer were in there. . .  Charlie Coleman was standing up and
the girl was sitting on the . . side of the bed. . .  There
were two beds in that room.  One of them had been slept in; that
bed was in a pretty bad condition, was torn up and wallowed over,
the sheets rumpled up. . .  The girl was dressed when I went
in, all but her slippers, which were sitting down by the side of
the bed.  Coleman was dressed. . .  Coleman said he would go
if I would take them home, and I took them,—carried her to her

---

Criminal Law, 16 C. J. p. 764, n. 54.

home and brought Coleman back here to Cordele. The girl lived on Mr. Wade's place, about eight or nine miles in the country. . . When I left the house Saturday night the bed on which I found the girl sitting the next afternoon was in good order. . . There were two pillows on that bed, and both of them had been used." The defendant and the girl had previously been seen together riding and at parties and on other occasions. The defendant, in his statement at the trial, denied that he was at the Dawkins home on the Saturday night mentioned, and said that he got in a car with young Dawkins and the girl Lessie Boyer that night, at the request of Dawkins, and rode with them to Pulaski county, and, at the insistence of Dawkins, went to the Dawkins home with them on Sunday morning, that they all went out in a car in the country on Sunday, and that later Dawkins took the girl home and then brought him home.

*Strozier & Gower, C. L. Harris,* for plaintiff in error, cited: *Long* v. *State,* 5 *Ga. App.* 176; *Mathis* v. *State,* 30 *Ga. App.* 10; 32 *Ga. App.* 542; *Weems* v. *State,* 84 *Ga.* 461.

*T. Hoyt Davis, solicitor-general,* contra.