## 20796. · DURDEN *v.* THE STATE.

DECIDED DECEMBER 18, 1930.

*Grayson C. Powell, I. W. Rountree,* for plaintiff in error.
*R. H. Humphrey, solicitor,* contra.

LUKE, J. The only question for determination in this case is whether or not the evidence supports the verdict finding Jack Durden guilty of living in a state of adultery with Mamie Durden.

The defendant was the second cousin of Murphey Durden, the husband of Mamie Durden. Jack was married and had "about ten

children," and Mrs. Mamie Durden had "about seven children." Jack often worked at Murphey's store, especially when the latter was out of town and on Saturdays. Jack visited Murphey's home both when Murphey was there and when he was away, and these visits were sometimes made in the daytime and sometimes at night. Numerous witnesses testified that Mrs. Mamie Durden's reputation "was bad," but no witness had ever seen any immoral conduct between her and the defendant. Weima Horton testified: that he operated a store in Norristown "right in front of Murphey Durden's store;" that one night he saw defendant's automobile in front of Murphey's house, and went there to look for the defendant; that some children met him at the front door and told him that Jack was not there, but that Mrs. Durden came out and said that defendant was in the back room, drunk, and that she wished witness would get him away; that witness found defendant sitting on a bed in said room; that defendant asked witness why he "wanted to come in there on him in such a way;" that defendant told witness he would see him later, and that witness "went on back to the store and Jack came on a little later;" that Jack put his finger to witness's nose and asked him "what that smelled like;" that defendant then asked witness not to tell what he had seen, and said that witness knew more than any one else; that Jack was not drunk, and that witness did not see anything wrong going on while he was at the house.

One witness testified that one day the defendant got him to tell Mrs. Mamie Durden not to come to the store, because the defendant's wife was there. Another witness testified that one day Mamie Durden told her that "every woman ought to have a sweetheart, and, if she did, her husband would love her better." Still another witness testified that one night she "saw Jack and Mamie in the backyard close together while Murphey was at the store," but that she saw nothing wrong going on between them. One witness swore that one day he saw defendant and Mamie Durden standing close together behind the counter of Murphey's store, talking—"too close together to look good." A witness testified that she lived just across the street from Murphey's house, and had been living there for four or five years, and that she had "never seen anything improper around there, and never thought anything about it." After testifying that in his opinion Mamie Durden's reputation was bad,

another witness swore: "My store is next door to where Mamie Durden lives. . . I have never seen anything wrong going on." Both the defendant and Mrs. Durden denied that they were guilty of any improper conduct.

In this case the State apparently undertook to overwhelm the defendant by proving by witness after witness that Mrs. Mamie Durden's reputation was "bad." We are aware of the potency of such proof where the evidence discloses that the parties were in a compromising situation, but we know of no case where such reputation, coupled with evidence as unsatisfactory as that in this case, was held sufficient to sustain a conviction of the offense of living in a state of adultery. The case of *Lightner* v. *State*, 126 *Ga.* 563 (55 S. E. 471), is infinitely stronger than the one at bar, yet the judgment was reversed for lack of evidence. The evidence in this case may raise a suspicion against the defendant, but, in our opinion, it is very weak, and falls far short of meeting the requirement of the Penal Code (1910), § 1010, that "it must exclude every other reasonable hypothesis save that of the guilt of the accused."

*Judgment reversed. Broyles, C. J., and Bloodworth, J., concur.*