### 28423. MERIWETHER *v.* THE STATE.

DECIDED NOVEMBER 20, 1940.

*F. Joe Turner, W. Dewey Smith,* for plaintiff in error.
*John A. Boykin, solicitor-general, J. W. LeCraw,* contra.

GARDNER, J. Jim Meriwether was jointly indicted, but severally tried and convicted, on four separate counts of robbery from the person by force and intimidation, upon allegations varying in the main only as to the victims and the amounts of money taken. On arraignment the defendant, by plea in abatement, moved to quash the indictment, which plea the State moved to strike. The court granted the State's motion, and the defendant excepted pendente lite. A motion for new trial was overruled, and the defendant excepted.

1. The defendant assigned error on the order sustaining the motion to strike his plea, for the alleged reasons that the defendant was illegally arrested and imprisoned, without lawful warrant or authority, in the jail of the City of Atlanta; that the "evidence supporting said indictment and the charges contained therein were obtained illegally and unlawfully by officers, without warrant or authority of law, or due process of law," under the unlawful arrest and imprisonment; that under such arrest and imprisonment "he was forced to exhibit his features and person to alleged robbery victims, against his will and over his protest, and without warrant or authority of law," by which, it was claimed, "he was identified by such alleged victims, who testified before the Fulton County grand jury and obtained this indictment upon which this defendant now objects, and containing four robbery counts;" when all of such acts and doings were violative of his rights secured to him by the constitution of the State of Georgia under art. 1, sec. 1, par. 6 (Code, § 2-106), providing that "No person shall be compelled to give testimony tending in any manner to criminate himself;" and under art. 1, sec. 1, par. 3 (§ 2-103), providing that "No person shall be deprived of life, liberty, or property, except by due process of law;" and were further violative of the rights secured to him by the constitution of the United States, amendment 5 (Code, § 1-805), providing that "No person . . shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law."

Granting, under the motion to strike, that the facts were as alleged in the plea (U. S. v. Caldwell, 8 Alaska, 117), and subject to the criticism with reference to the violation of the constitutional rights of the defendant, State and Federal, it does not *affirmatively* appear that there was no other admittedly competent evidence on which the indictment was returned. It must be presumed that the indictment was returned on legal evidence (People v. Horvatt, 139 Misc. 814, 250 N. Y. Supp. 209; Steensland v. Hoppmann, 213 Wis. 593, 252 N. W. 146; U. S. v. Silverthorne, 265 Fed. 853; U. S. v. Olmstead, 7 Fed. 2d, 756); the burden is upon the defendant to show that the indictment was returned wholly upon illegal evidence (*Summers* v. *State, 63 Ga. App.* 445 (3), 11 S. E. 2d, 409; Cravens v. U. S., 62 Fed. 2d, 261); and a *failure* to show that *only* incompetent evidence was presented to the

grand jury will subject the plea in abatement to dismissal (U. S. *v.* Siebrecht, 44 Fed. 2d, 824). Pleas in abatement are dilatory pleas (State *v.* Shore, 206 N. C. 743, 175 S. E. 116), and are not favored (Shreve *v.* U. S., 77 Fed. 2d, 2; State *v.* Johnson, 55 R. I. 350, 181 Atl. 412) ; they must be strictly construed (Walker *v.* U. S., 93 Fed. 2d, 383) ; they must be certain in intent (Randolph *v.* State, 200 Ind. 210, 162 N. E. 656), and leave nothing to be supplied by intendment (Haddock *v.* State, 141 Fla. 132, 192 So. 802; Randolph *v.* State, supra) ; and in considering such pleas every inference must be against the pleader (U. S. *v.* Lehigh R. Co., 43 Fed. 2d, 135). In the instant case the plea, in referring to the evidence supporting the indictment, must be considered in the light of the foregoing principles, as referring *only* to that evidence which the plea alleges was obtained illegally and in contravention of the constitutional rights of the defendant, and can not be considered as an averment that there was no other and competent evidence on which the indictment might not in fact have been founded. When so considered, the sufficiency (*Summers* v. *State,* supra) of such other evidence not being subject to review (*Powers* v. *State,* 172 *Ga.* 1 (3), 157 S. E. 195), the plea was subject to the motion to strike, and the court did not err in sustaining the motion. Moreover, while the State made no motion to strike the plea because it was unverified, the court's order striking it was none the less sound on that ground. For necessity of verification, see Code, § 81-403, providing that "no dilatory plea shall be received or admitted unless an affidavit shall be made to the truth thereof."

2. The defendant assigned error on the order overruling his motion for new trial, on the ground (as in his exceptions pendente lite) that he was arrested and imprisoned, against his will and without lawful warrant or authority, while at home violating no law, and was held in jail, likewise without his consent and without lawful warrant or authority, and that without legal authority and without his consent he was *forced* to go several times into an adjacent room of the jail and to stand in a line-up of prisoners, there to present himself and to expose his features to the alleged victims for possible identification, and that by thus presenting himself he was compelled to perform such acts as were in law and in fact forcing him to give testimony against himself, in violation of the rights secured to him by the constitutions of the State and of the

United States, the provisions of which are quoted above. The defendant contended further that by his being thus forced to perform such incriminating acts the alleged victims were enabled to view him, and that without having known his identity as the perpetrator of the crimes, or how to swear out warrants for him, they gained such information as prompted and enabled them to claim identity of him as the perpetrator of the offenses alleged, and thereby to further the prosecution. The assignment of error, to the extent that the right secured to the defendant under the fifth amendment of the constitution of the United States was violated by such acts, is without merit. The provision of this amendment that no person shall be compelled to give incriminating evidence in a criminal case against himself, is a restriction on the power of the Federal government, and has no application to criminal prosecutions in a State court. *Wilburn* v. *State,* 141 *Ga.* 510 (81 S. E. 444); *Perdue* v. *State,* 134 *Ga.* 300 (67 S. E. 810); *Griggs* v. *State,* 29 *Ga. App.* 212 (114 S. E. 582); 70 C. J. 721, § 874; Ensign *v.* Pennsylvania, 227 U. S. 592 (33 Sup. Ct. 321, 57 L. ed. 658); Banks *v.* State, 207 Ala. 179 (93 So. 293, 24 A. L. R. 1359); People *v.* Botkin, 9 Cal. App. 244 (98 Pac. 861); Twining *v.* New Jersey, 211 U. S. 78 (29 Sup. Ct. 14, 53 L. ed. 97); Davison *v.* Guthrie, 186 Iowa, 211 (172 N. W. 292); People ex rel. Moll *v.* Danziger, 238 Mich. 39 (213 N. W. 448, 52 A. L. R. 136); State *v.* Eddins, 161 La. 240 (108 So. 468); Commonwealth *v.* Dabbrierio, 290 Pa. 174 (138 Atl. 679). A defendant whose testimony would tend to incriminate him under State laws is not within the protective provision of the fifth amendment of the Federal constitution. U. S. *v.* Murdock, 51 Fed. 2d, 389.

We now consider whether forcing the defendant, while under illegal arrest, imprisonment, and detention, to perform against his will the *acts of going into another room* and, in line with other prisoners, *standing passively* for identification by the alleged victims, with features presented, by which they declared their recognition, learned his name, and furthered the prosecution, were violative of the State constitutional provisions. Even though the provision that no person shall be compelled to give testimony, or do acts, tending to incriminate himself, is to be liberally construed in favor of the accused (*Underwood* v. *State,* 13 *Ga. App.* 206, 78 S. E. 1103; 70 C. J. 721, § 873; Ward *v.* State, 27 Okl. Cr. 362,

228 Pac. 498), forcibly causing a prisoner to take a position in prison in line with other prisoners, there passively to remain while he is being inspected by the alleged victims for identification as the perpetrator of the crimes, is not in contravention of the rights secured to him under this provision of our constitution. "Directing defendant to stand up for identification is not compelling him to be a witness against himself." 16 C. J. 568, § 1100. People v. Goldenson, 76 Cal. 328 (19 Pac. 161); State v. Reasby, 100 Iowa, 231 (69 N. W. 451); State v. Ruck, 194 Mo. 416 (92 S. W. 706); People v. Gardner, 144 N. Y. 119 (38 N. E. 1003). "It is always proper to ask a witness to look about the court and to point out the person who committed the crime." 16 C. J. 568, § 1100; People v. Elliott, 272 Ill. 592 (112 N. E. 300); State v. Johnson, 67 N. C. 55. It is also proper "to point out accused and ask the witness if he is the person who committed the crime." 16 C. J. 568, § 1100; State v. Hall, 79 Iowa, 674 (44 N. W. 914). "Photographing him while in custody and using the photograph on the trial to identify him, does not" violate this constitutional provision. 16 C. J. 569, § 1104; Shaffer v. U. S., 24 App. D. C. 417. The defendant's identity may be tested by bringing the witness into the court-room and asking him to identify the particular person among those present. State v. Murphy, 118 Mo. 7 (25 S. W. 95). "Some courts state the rule broadly to be that the prohibition against compelling a man in a criminal court to be a witness against himself is a prohibition of the use of physical or moral compulsion to extort communications from him, not an exclusion of his body as evidence where it may be material." 16 C. J. 568, § 1100; Holt v. U. S., 218 U. S. 245 (31 Sup. Ct. 2, 54 L. ed. 1021, 20 Ann. Cas. 1138); U. S. v. Van Teng, 23 Philippine, 145. A witness has a right to view the accused, by having him stand up, so that he may be positive in his identification. Rutherford v. State, 135 Tex. Cr. 530 (121 S. W. 2d, 342). However, for the purpose of identification, the accused may not be taken and placed within the framework of the scene of the crime, there for identification within the co-ordinating, incriminating circumstances of the scene. See Aiken v. State, 16 Ga. App. 848 (2) (86 S. E. 1076), where it was held that placing the defendant in a certain position, for purpose of identification, at the scene of the crime, violated his constitutional rights. The case of Blackwell v. State, 67 Ga. 76 (44 Am. R.

717), is not authority that a prisoner may not be presented to a witness for identification, as under the circumstances of the instant case. There the court held that to forcibly cause the defendant to make profert of himself was error, where the purpose was to aid the witness to describe how much of the defendant's leg was cut off, this fact being *material* to determine whether the remaining part of the leg in fact made a certain described track or imprint at the scene of the crime. The question of identification, as such, was not involved.

In the instant case the defendant neither did, nor was he required to do, any overt act in aid of the identification during the periods of standing passively for inspection, and accordingly did not come within the rulings of *Day* v. *State,* 63 *Ga.* 667, *Blackwell* v. *State,* supra, *Evans* v. *State,* 106 *Ga.* 519 (32 S. E. 659, 71 Am. St. R. 276), and other decisions unnecessary to be cited, holding in the same line. Was forcing the defendant to go from his cell of confinement to a near-by room of the jail, there for the inspection, itself such an act as was in aid of the identification, and violative of the defendant's constitutional rights? The purpose of the requirement was the placement of the prisoner, in alignment with the other prisoners, for the inspection, and in no way overtly aided the victims in the *process* of identification. The fact that the prisoner had been illegally arrested and imprisoned, and during such illegal detention was required to go for inspection, does not alter the ruling; such arrest, imprisonment, and detention do not throw a protective cloak about the prisoner or a protective shield over his identity, nor do they insure his segregation and seclusion. *In the absence of his release by habeas-corpus proceedings,* he is and remains subject to the proper authorities, for the control and conduct of his person, notwithstanding he may have civil redress for the unlawful arrest, imprisonment, detention, and control of his person. Under the criterion as stated in *Calhoun* v. *State,* 144 *Ga.* 679, 682 (87 S. E. 893), the defendant was forced to do no act tending to incriminate himself. It follows that the acts complained of in this assignment of error were not in violation of the rights secured to the defendant by the constitutional provision that "no person shall be deprived of life, liberty, or property, except by due process of law."

3. Error was assigned on the refusal of the court to allow,

under the Code, § 59-805, a total of eighty strikes, or twenty for each of four felony counts set forth in the indictment charging four separate and distinct offenses of robbery, each punishable by imprisonment and labor in the penitentiary for not less than two nor more than twenty years. A defendant is not entitled to additional peremptory challenges from the fact that the indictment contains several counts charging separate and distinct offenses joinable in the same indictment. 35 C. J. 414, § 474 (4); *Vismore* v. *State,* 41 *Ga. App.* 544 (153 S. E. 776), where the court, on observing that "The defendant was convicted . . on an accusation containing two counts, each charging him with possessing corn whisky at a different time and place," and that "The second count alleges that the defendant 'did have, control, and possess spirituous and intoxicating liquor, to wit, 2 gallons of corn whisky,'" and that "The jury returned a general verdict of guilty, and the court sentenced the defendant separately under each count of the accusation," held: "The court properly overruled both the demurrer to the accusation and the defendant's motion that he be allowed 'a full number of peremptory challenges of the jury on each separate and distinct charge in the accusation.'" *York* v. *State,* 42 *Ga. App.* 453 (3) (156 S. E. 733); State *v.* McGee, 80 Conn. 614 (69 Atl. 1059); State *v.* Skinner, 34 Kan. 256 (8 Pac. 420); Com. *v.* Walsh, 124 Mass. 32; U. S. *v.* Bromley, 4 Utah, 498 (11 Pac. 619). In People *v.* Kelly, 203 Cal. 128 (263 Pac. 226), it was held that the defendant, on trial for three murders, was not entitled to the same number of strikes as if he were being tried separately on each charge. The ruling in *Slicer* v. *State,* 172 *Ga.* 445 (3) (157 S. E. 664), is not authority to the contrary. It was there held that "there was but a single offense charged," when the then obvious conclusion followed that the defendant had been entitled to no additional challenges. This assignment of error is without merit.

4. The defendant assigned error on the charge to the jury on the law of confessions, in that the charge was incorrect in principle and was not authorized by the evidence, as no confession in fact or law had been made. The evidence relative to a confession, given by the officer for the State, was as follows: "I made the arrest of this defendant at his home . . and had a conversation with him after the arrest. I never threatened Mr. Meriwether in any way, never made him any promises. I questioned Mr. Meriwether

about this series of robberies in this indictment, of Dr. Taylor, Meyers, Harry Dottenheim, and Holliday, before the line-up. He denied any knowledge of anything. . . He said he did not want to talk, did not care to talk, discuss it. After the line-up, and these people identified him, he then admitted it to me; he said that the money, there was more money alleged to have been taken out of two of these places than they got. . . I asked him where his gun was; he said he did not have one. We took him to the office, and I told him of some places he had been with this gun. He told me that if I would get three people to identify him as having the gun he would get it. So I did, and he took me back to . . his . . kitchen cabinet and got a 45 nickel-plated pistol. It was in a money bag. . . When I was discussing this hold-up with him he laughed about it. In my questioning him and my discussions with him there was never any doubt but what the other fellow was not in it, and he never did deny these hold-ups after he was identified."

While it is reversible error for the court to charge on the law of confessions where there is no proof of a plenary confession, but only of incriminating admissions (*Richardson* v. *State,* 47 *Ga. App.* 138, 169 S. E. 770; *Thomas* v. *State,* 143 *Ga.* 268 (3), 84 S. E. 587; *Benford* v. *State,* 38 *Ga. App.* 740, 145 S. E. 474; *Walker* v. *State,* 50 *Ga. App.* 240, 177 S. E. 756; *Owens* v. *State,* 120 *Ga.* 296 (3), 48 S. E. 21), and while the requirements are, to constitute a confession as such, that the facts admitted must comprise all the essential elements necessary to make out the case against him (*Hart* v. *State,* 14 *Ga. App.* 714, 716, 82 S. E. 164), yet a confession is *sufficiently plenary in substance,* and responsive to the requirement that it contain all the essential elements necessary to make out the case, when the confession, though lacking in a recital of the many details constituting the crime, does disclose certain facts from which the main fact of guilt is revealed. According to the officer, he questioned the defendant on the series of robberies "in this indictment," of the victims, Meyers, Dottenheim, Holliday, and Taylor, which indictment was before the jury for reference to the extent the officer questioned the defendant "about this series of robberies in this indictment." At first the defendant denied any knowledge of these crimes, but after the line-ups when the victims identified him, he stated to the officer that "There was more money alleged

to have been taken out of two of these places than they got." We think that the response of the defendant was sufficiently plenary to indicate that he had under consideration the four robberies as alleged in the indictment, that he had been confronted with the alleged victims identifying him, that denial would avail him no further, and that he was specifically considering, and admitting, the fact that he had been in each place as charged, when he undertook to reveal that the amounts of money taken from two of the places, out of the *four* charged to have been robbed, were incorrectly set out in the indictment, implying thereby that he knew that the amounts taken from the remaining two places were correctly alleged in the indictment. We think a prima facie confession was made out, especially where the defendant, being represented by able counsel, failed to explain his knowledge in these respects and failed to object to such testimony. The statement of the officer, "he then admitted it to me," is based upon sufficient facts to be admitted as a lawful conclusion. But we think that the remainder of the testimony, taken as a whole, or in the particulars above discussed, aside from this last statement, was sufficient to present a prima facie confession and to authorize the court to charge the jury on the law of confessions. The assignment of error on the correctness of the principle charged is without merit.

5. The remaining assignments of error are without merit. The evidence supported the verdict, and the court did not err in overruling the motion for new trial.

*Judgment affirmed.* *Broyles, C. J., and MacIntyre, J., concur.*