41211.  JOHNSON v. THE STATE.

Decided March 10, 1965.

*Dan Copland,* for plaintiff in error.

*W. B. Skipworth, Jr., Solicitor General,* contra.

EBERHARDT, Judge. █ In special ground 1 error is assigned upon the admission of the search warrant for "dangerous drugs" over the objection that neither the affidavit upon which the warrant issued nor the warrant itself disclosed any of the facts upon which it was based, that no judicial determination could have been made of the existence of probable cause upon the recitals in them, and that the Deputy Clerk of the Municipal Court of Columbus, not being a judicial officer, could make no judicial determination of the existence of probable cause and had no authority to issue the warrant. In special ground 3 error is likewise assigned upon the admission of the search warrant for "adultry-fornication" (sic).

█ First, we must dispose of the question of whether the deputy clerk could issue a valid warrant, for if he could not the warrants would be void regardless of what evidence may have been before him or what recitals made in the affidavits and warrants.

The Municipal Court of Columbus was created by Ga. L. 1952, pp. 2184, et seq. Section 22 of the Act, at p. 2194, provides:

"Be it further enacted by the authority aforesaid, that the clerk of said court and the deputy clerks of said court shall have complete power and authority, co-existent and co-ordinate with the power of the judge of said court under the provisions of this Act, to issue any and all warrants, civil or criminal, summary processes and writs which are issuable as a matter of right; to accept and approve bonds and to discharge any and all other functions, ministerial in character, which under the laws of this State are performable by a justice of the peace."

Nothing in Art. I, Sec. I, Par. XVI (*Code Ann.* § 2-116) of the Constitution of 1945[1] or the statutory provisions of *Code Ch.* 27-3 specifies who shall have authority or jurisdiction to issue a search warrant. At common law justices of the peace had general power to issue search warrants for stolen goods. Jones v. German, 2 QB 418; 1 QB 374; 24 Eng. Rul. Cas. 1, Anno. p. 10. So long as a judicial determination of the existence of probable cause is made, as required by the rule of *Smoot v. State,* 160 Ga. 744 (128 SE 909), there is no constitutional inhibition against designation by the General Assembly of persons other than a justice of the peace for doing it. The statute creating the Municipal Court of Columbus sufficiently clothes the clerk and deputy clerks with the powers of a magistrate to

---

[1]"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated; and no warrant shall issue except upon probable cause, supported by oath, or affirmation, particularly describing the place, or places, to be searched, and the persons or things to be seized." This provision, with slight immaterial variation, is the same as the Fourth Amendment to the Constitution of the United States. See *Code* § 1-804.

issue criminal warrants. Search warrants are criminal in nature, having no relation to civil process and are unavailable to an individual for the maintenance of a mere private right. People, ex rel. Robert Simpson Co. v. Kempner, 208 NY 16 (101 NE 794). Though not himself a judge or magistrate, there is no reason why the deputy, being clothed with the power to do it, can not make a judicial determination as to the existence of probable cause. Absent the statutory power he could not do it, but the power is one that the legislature may, in its wisdom, lodge in any person whom it may choose. *Ormond v. Ball,* 120 Ga. 916, 921 (48 SE 383).

We now pass to a consideration of whether the warrant was otherwise valid. A search warrant may be issued only for the making of a search authorized at common law or by statute. 4 Wharton, Criminal Law & Procedure (1957) 173, § 1548; Sugarman v. State, 173 Md. 52 (195 A 324); White v. Wager, 185 Ill. 195 (57 NE 26). However, no question is raised here as to whether the search to be made under these warrants was authorized either at common law or by some statute.

It is urged that the affidavit upon which the warrant issued was wholly insufficient in that no facts were stated in it upon which a determination of the existence of probable cause could be made. Certainly, since no facts of any kind were stated in the affidavit, it was deficient in this respect. While probable cause may be made to appear by a showing under oath before the magistrate when issuance of the warrant is sought, *Smoot v. State,* 160 Ga. 744, supra, it is the better, even necessary, practice that the facts then made to appear as showing probable cause be incorporated in the affidavit. See U. S. v. Ventresca, 380 U. S. 102 (85 SC 741, 13 LE2d 684). In some jurisdictions no valid warrant can be issued unless that is done. People v. Dolgin, 415 Ill. 434 (114 NE2d 389); Adams v. Commonwealth, 197 Ky. 235 (246 SW 788). If this were done the judge of the court in which the warrant is tendered in evidence, or in which the warrant becomes material to the question of whether a lawful search has been made, could, upon inspection, determine whether the showing before the magistrate was sufficient to authorize issuance of the warrant and, consequently, whether the

warrant and evidence obtained in connection with the search should be admitted.[2]

But whether by recitals in the affidavit or by an independent showing before the magistrate, the facts must be such as to lead a man of prudence and caution to believe that the offense has been committed. Grau v. U. S., 287 U. S. 124 (53 SC 38, 77 LE 212). Mere speculation, conjecture or opinion is not enough. Nor is mere rumor. Elardo v. State, 164 Miss. 628 (145 S 615). "[P]robable cause means . . . reasonable grounds, and is that apparent state of facts which seems to exist after reasonable and proper inquiry." *Coleman v. Allen,* 79 Ga. 637 (1) (5 SE 204, 11 ASR 449). And, as was held in *Smoot v. State,* 160 Ga. 744, supra, the determination as to whether there is probable cause is not to be made by one who applies for issuance of the warrant; it must be made by the magistrate from a consideration of the facts submitted under oath. It must exist before the search is made, and can not be supplied by after-discovered facts.

As to the standard of the evidence which the magistrate may act upon in the determination of probable cause and issuance of a search warrant, Judge Townsend gave some indication when he observed in *Hix-Green Co. v. Dowis,* 79 Ga. App. 412, 419

---

[2]In the state of Washington where, as here, all of the facts are not required to be stated in the affidavit, it is held that this does not in any way negative "the rule of the Supreme Court of the United States recently announced to the effect that by evidence competent in a trial before a jury the probable cause must be so far established as would lead a man of prudence and caution to believe that the offense had been committed. Grau v. U. S., 287 U. S. 124 (53 SC 38, 77 LE 212)." Ladd v. Miles, 171 Wash. 44 (17 P2d 875).

"The States are not thereby precluded from developing workable rules governing arrests, searches and seizures to meet 'the practical demands of effective criminal investigation and law enforcement' in the States, provided those rules do not violate the constitutional proscription of unreasonable searches and seizures and the concomitant command that evidence so seized is inadmissible against one who has standing to complain." Ker v. California, 374 U. S. 23, 34 (83 SC 1623, 10 LE2d 726).

(53 SE2d 601) that "it is proper for peace officers to testify that a certain person is reported to be handling liquor, in explaining why a search warrant was procured and why a raid was made. But such hearsay evidence is not admissible to prove the crime." Recently the Supreme Court of the United States in United States v. Ventresca, 380 U. S. 102, supra, has given a rather full and definitive answer to that question. "While a warrant may issue only upon a finding of 'probable cause,' this Court has long held that 'the term "probable cause" means less than evidence which would justify condemnation,' Locke v. United States, 7 Cranch 339, 348, and that a finding of *'probable cause' may rest upon evidence which is not legally competent in a criminal trial.* (Emphasis supplied). Draper v. United States, 358 U. S. 307, 311. As the Court stated in Brinegar v. United States, 338 U.S. 160, 173, 'There is a large difference between the two things to be proved [guilt and probable cause], as well as between the tribunals which determine them, and therefore a like difference in the *quanta* and modes of proof required to establish them.' Thus hearsay may be the basis for issuance of the warrant 'so long as there . . . [i]s a substantial basis for crediting the hearsay.' Jones v. United States, 362 U.S. 257, 272. And in Aguilar v. Texas, 378 U.S. 108, 114 we recognized that 'an affidavit may be based on hearsay information and need not reflect the direct personal observations of the affiant,' so long as the magistrate is 'informed of some of the underlying circumstances' supporting the affiant's conclusions and his belief that any informant involved 'whose identity need not be disclosed . . . was "credible" or his information "reliable." '

"These decisions reflect the recognition that the Fourth Amendment's commands, like all constitutional requirements, are practical and not abstract. If the teachings of the Court's cases are to be followed and the constitutional policy served, affidavits for search warrants, such as the one involved here, must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion. They are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common

law pleadings have no proper place in this area. A grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting.

"This is not to say that probable cause can be made out by affidavits which are purely conclusory, stating only the affiant's or an informer's belief that probable cause exists without detailing any of the 'underlying circumstances' upon which that belief is based. See Aguilar v. Texas, supra. Recital of some of the underlying circumstances in the affidavit is essential if the magistrate is to perform his detached function and not serve merely as a rubber stamp for the police."

Does the recital in the warrant, "evidence having been submitted to me to show probable cause," meet the requirement? Does it foreclose the matter of whether facts were submitted which were sufficient to establish the existence of probable cause? Obviously not. The recital discloses no more than that evidence was submitted *to show* probable cause. There is no recital in the warrant that any determination of the *existence* of probable cause was made, and, in addition, it falls under the standard prescribed in U. S. v. Ventresca, supra.

"The rule of probable cause is a practical, nontechnical conception affording the best compromise that has been found for accommodating . . . often opposing interests. Requiring more would unduly hamper law enforcement. To allow less would be to leave law-abiding citizens at the mercy of the officers' whim or caprice." Brinegar v. U. S., 338 U.S. 160, 176 (69 SC 1302, 93 LE 1879).

Since none of the facts upon which a determination could have been made appeared in either the affidavits or the warrants, when objection to the admission of the warrants on that ground was made the State had the burden of showing what facts were submitted before the magistrate. The situation is like unto that when evidence is obtained by search of the defendant's person after an illegal arrest. "The State is required to prove its case by legal evidence. From the evidence adduced it is not shown whether the arrest was or was not a legal arrest; and the testimony could not affect the rights of the defendant,

or be used to convict him, until it was shown affirmatively that the defendant had been legally arrested." *Sherman v. State,* 2 Ga. App. 148, 150 (58 SE 393). Just as the burden is on the State to show that the arrest was legal, it is likewise the State's burden to show that a search was legal. In this the State utterly failed. Indeed, it made no effort to carry that burden.[3]

"When the constitutional validity of an arrest is challenged, it is the function of a court to determine whether the facts available to the officers at the moment of the arrest would 'warrant a man of reasonable caution in the belief' that an offense has been committed. Carroll v. U. S., 267 U.S. 132, 162 (45 SC 280, 69 LE 543). If the court is not informed of the fact upon which the arresting officers acted, it cannot properly discharge that function." Beck v. Ohio, 379 U.S. 89, 96 (85 SC 223, 13 LE2d 142). "[G]ood faith on the part of the arresting officers is not enough." Henry v. U. S., 361 U.S. 98, 102 (80 SC 168, 4 LE2d 134). This principle is equally applicable to the matter of a search.

Any less requirement for the sustaining of a search warrant would result in a reinstatement of the odious writs of assistance which wreaked havoc with the freedom of the king's subjects until halted by the action of Parliament in 1776, and which brought on the insistent demand for incorporation of the bill of rights in the Constitution of this Republic. See Boyd v. U. S., 116 U.S. 616 (6 SC 524, 29 LE 746); *Marshall v. Riley,* 7 Ga. 367, 370 (3); *Underwood v. State,* 13 Ga. App. 206 (78 SE 1103).

The warrants were void, and their admission in evidence over proper objection was error.

---

[3]"Only where incident to a valid arrest, U. S. v. Rabinowitz, 339 U.S. 56 (70 SC 430, 94 LE 653) or in 'exceptional circumstances,' Johnson v. United States, 333 U.S. 10 (68 SC 367, 92 LE 436), may an exemption lie, and then the burden is on those seeking the exemption to show need for it, McDonald v. United States, 335 U.S. 451 (69 SC 191, 93 LE 153). In so doing the [Fourth] Amendment does not place an unduly oppressive weight on law enforcement officers but merely interposes an orderly procedure under the aegis of judicial impartiality that is necessary to attain the beneficent purposes intended." United States v. Jeffers, 342 U.S. 48, 51 (72 SC 93, 96 LE 59).

■ In special ground 2 error is assigned upon the admission of the testimony of Lt. Chapman concerning the search made by him and Detective Baker of the premises described in the search warrant, of finding the two couples sleeping together in beds, of the arrest of Wyatt and the defendant Eloise Johnson, and of finding the bottle of morphine tablets when they rolled from under the defendant's clothes after her arrest, over the objection that all of this was accomplished under and pursuant to a void search warrant.

Under the rule of Mapp v. Ohio, 367 U.S. 643 (81 SC 1684, 6 LE2d 1081); *Smoot v. State,* 160 Ga. 744, supra; *Brown v. State,* 107 Ga. App. 672 (131 SE2d 146); *Dennis v. State,* 108 Ga. App. 646 (134 SE2d 519); *Raif v. State,* 109 Ga App. 354 (136 SE2d 169), the admission of this evidence was error.[4]

On behalf of the State it is urged that since the officers had a second search warrant authorizing them to search for "adultry-fornication" (sic) and since the defendant and Wyatt, to

---

[4]Mapp v. Ohio effectively overruled *Williams v. State,* 100 Ga. 511 (28 SE 624); *Calhoun v. State,* 144 Ga. 679 (87 SE 893); *Hysler v. State,* 148 Ga. 409 (96 SE 884); *Martin v. State,* 148 Ga. 406 (96 SE 882); *Hyde v. State,* 196 Ga. 475 (26 SE2d 744); *Leatherman v. State,* 11 Ga. App. 756 (76 SE 102); *Smith v. State,* 17 Ga. App. 693 (88 SE 42); *Brown v. State,* 18 Ga. App. 288 (89 SE 342); *Stoker v. State,* 23 Ga. App. 11 (97 SE 273); *Turk v. State,* 55 Ga. App. 732 (3) (191 SE 283); *Meriwether v. State,* 63 Ga. App. 667 (11 SE2d 816); *Bentley v. State,* 70 Ga. App. 490 (28 SE2d 660); *Grant v. State,* 88 Ga. App. 745 (77 SE2d 748), and others of like tenor, all holding that evidence tending to establish guilt is admissible though illegally obtained. These cases sapped the vitality from *Smoot v. State,* 160 Ga. 774, supra; *Hammock v. State,* 1 Ga. App. 126 (58 SE 66); *Sherman v. State,* 2 Ga. App. 148 (58 SE 393); *Sherman v. State,* 2 Ga. App. 686 (3) (58 SE 1122); *Hughes v. State,* 2 Ga. App. 29 (3) (58 SE 390); *Jackson v. State,* 7 Ga. App. 414 (2) (66 SE 982), and others, all holding that illegally obtained evidence can not be admitted against a defendant, but they are now revitalized. "The provisions for search and seizure are strictly construed against the state and in favor of the citizen." Elardo v. State, 164 Miss. 628, supra.

whom she was not married, were found sleeping together in the same bed, the arrest was legal because either the offense of disorderly conduct or of fornication and adultery was being committed in the officers' presence. With this we can not agree. The arrest was made in the dead of the night when not only these people, but those in the neighborhood around were asleep. There was nothing loud, boisterous, turbulent, or public in what they were doing. It was not calculated to and did not cause any breach of the peace. *Kahn v. City of Macon,* 95 Ga. 419 (22 SE 641). " '[D]isorderly conduct' means some act which tends to a breach of the peace, or at least to disturb that portion of the public which may see or hear the conduct claimed to have been disorderly." *Sheppard v. City of Jackson,* 11 Ga. App. 811, 812 (76 SE 367). In *Williams v. City of Valdosta,* 47 Ga. App. 810 (171 SE 553) the circumstances were much stronger than here. The police received a mysterious call at about 3 a.m. saying that if they would go to a named address "a man would be found there." When an officer went to the address and knocked on the door a Negro woman, clad in her night clothes, opened it, and upon entering the house he found in a closet a white man in his night clothes. The man tried to prevent the policeman from opening the closet door, and gave as his excuse for being there that he had come to the woman's house to buy whiskey. This court, reversing a conviction for disorderly conduct, observed: "The evidence raises a most violent suspicion that a penal law of this State was violated, but we are not prepared to say that it shows a violation of the municipal ordinance [defining the offense of disorderly conduct]. There is no evidence of any violent, boisterous, or turbulent acting. On the contrary we are constrained to believe that the utmost quiet prevailed. The only part of the ordinance which might be shown to have been violated is that of acting in an indecent manner. In 31 CJ 415 'indecent acting' is defined as 'that which the common sense of decency requires should be kept concealed or private.' The publicity of an act is one of the requisites to make it indecent. An act done in private may be decent while the same act done in public or even before one person may be indecent."

The conduct of these people, while unconventional and unac-

ceptable in respectable society (save perhaps in the motion picture world) was not disorderly in a legal sense. "There is no distinction in the rights of citizens, whether there may be in the personnel or not. A citizen may be the embodiment of evil, full of iniquity, and may wholly disregard his duties as a citizen and violate the laws of the state, nevertheless, his rights, under the law, are sacred. It is seldom that a law-abiding and virtuous citizen has an occasion to test his constitutional rights." Elardo v. State, 164 Miss. 628, supra.

Though a circumstance from which a jury trying for the offense might have concluded that fornication and adultery may *have been* committed, *Eldridge v. State,* 97 Ga. 192 (23 SE 832), *Starke v. State,* 97 Ga. 193 (23 SE 832), *Johnson v. State,* 119 Ga. 446 (46 SE 634), *Cummings v. State,* 14 Ga. App. 441 (81 SE 366), *Ramsey v. State,* 16 Ga. App. 218 (84 SE 984), *Wright v. State,* 71 Ga. App. 520 (31 SE2d 73), it is weak and somewhat doubtful, *Davis v. State,* 92 Ga. 458 (17 SE 336), *Johnson v. Johnson,* 218 Ga. 28 (126 SE2d 229), *Long v. State,* 5 Ga. App. 176 (62 SE 711), *Richardson v. State,* 32 Ga. App. 542 (124 SE 77), *Coleman v. State,* 37 Ga. App. 606 (141 SE 431), *Durden v. State,* 42 Ga. App. 345 (156 SE 294). Even so, it would not demonstrate that the offense *was being committed* in the officers' presence. If committed, it had already been accomplished. There was no evidence of any effort to escape on the part of either Wyatt or this defendant. To effect a valid arrest on that charge it would have been necessary to obtain a warrant charging them with that offense. It was not done.

The arrest, which took place before discovery of the bottle of morphine tablets, was illegal. In order to support as valid a search made incident to or in connection with an arrest, the arrest itself must be legal. U. S. v. Rabinowitz, 339 U.S. 56, supra; *Pitts v. State,* 14 Ga. App. 283 (80 SE 510).

If the arrest were for possession of the narcotics the State could fare no better, for in that event "the search was not an incident to but was the cause of the arrest; and . . . the search, unlawful before the arrest, was not legalized by the arrest made as a result of it." Walker v. U. S., 125 F2d 395, 396 (3).

The evidence should have been excluded.

These rulings obviate any necessity for a discussion of special grounds 4, 5 or 6, all assigning error upon the admission, over proper objection, of evidence obtained during the course of or as a result of the illegal search. The objections were good, and the evidence should have been excluded. Overruling these grounds was error.

*Judgment reversed. Nichols, P. J., and Pannell, J., concur.*