40184. THE STATE v. STEPHENS et al.

WELTNER, Justice.

Richard Furman Stephens and Kathryn Crowe Stephens were indicted for violation of the Georgia Controlled Substances Act, OCGA § 16-13-1 et seq. (Code Ann. § 26-9913 et seq.). Prior to trial, they moved to suppress evidence obtained pursuant to a search warrant on the ground that the warrant was issued without probable cause. The motion was denied. The Court of Appeals reversed, finding under the "totality of the circumstances" analysis enunciated in Illinois v. Gates, —— U. S. —— (103 SC 2317, 76 LE2d 527) (1983), that the affidavit was insufficient. *Stephens v. State,* 167 Ga. App. 417 (307 SE2d 9) (1983).

We granted certiorari to determine whether that test requires exclusion of evidence obtained pursuant to the search warrant.

The affidavit is based upon information provided by informants and upon investigation by the affiant, a police officer. Under the Aguilar-Spinelli test, infra, two standards for reliability pertained where issuance of a search warrant was based primarily on an informant's tip. The affiant was required to state the underlying circumstances showing (1) the informant's reliability, and (2) the source of the informant's information. Aguilar v. Texas, 378 U. S. 108 (84 SC 1509, 12 LE2d 723) (1964); Spinelli v. United States, 393 U. S. 410 (89 SC 584, 21 LE2d 637) (1969). Illinois v. Gates, supra, has now supplanted this rule by a "totality of the circumstances" test. "The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for . . . conclud[ing]' that probable cause existed." Id. at 2332. (Ellipses and brackets in text.)

The requirements of the Gates analysis are near equivalents to those traditionally applied by the courts of our state. "[P]robable cause means . . . reasonable grounds, and is that apparent state of facts which seems to exist after reasonable and proper inquiry." *Johnson v. State,* 111 Ga. App. 298, 303 (141 SE2d 574) (1965), citing *Coleman v. Allen,* 79 Ga. 637 (5 SE 204) (1887).

In *Strauss v. Stynchcombe,* 224 Ga. 859, 865 (165 SE2d 302) (1968), we adopted the reasoning set forth in Brinegar v. United States, 338 U. S. 160 (69 SC 1302, 93 LE 1879) (1949): "In dealing with probable cause, . . . as the very name implies, we deal with probabilities. They are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians act." See also *Peters v. State,* 114 Ga. App. 595, 596 (152 SE2d 647) (1966). The United States Supreme Court in Illinois v. Gates seemingly now reaffirms its earlier position, as stated in Brinegar. Thus it appears that we have come full circle, and are now permitted to employ, once again, a practical, common-sense approach to the requirement of probable cause relative to the issuance of search warrants.

In this case, the affidavit attached to the search warrant contains the following information: in January 1982, the affiant police officer received information from a "confidential and reliable informant" that one Duffie was actively involved in the trafficking of of marijuana. In addition, the affiant received information from a second "confidential and reliable informant" that Richard Furman

Stephens was involved in drug trafficking. A third "confidential and reliable informant" gave information that Duffie and Stephens were actively involved together in drug trafficking. Affiant's investigation confirmed a "close relationship" between Stephens and Duffie, and telephone toll records showed daily contact between them. Four months later, affiant received information that Duffie had returned from Florida with a shipment of marijuana which would be ready for sale within three days. Upon surveillance of Stephens' residence, affiant observed Duffie and Stephens going in and out of Stephens' house; on the night before the alleged sale, affiant observed a meeting at Stephens' residence lasting from 4:00 p.m. until midnight. On the day of the alleged sale, affiant received information from one Hayes that Duffie planned to sell ten pounds of marijuana to Hayes that afternoon at 3:00 p.m. in LaGrange, Georgia. At 1:45 p.m., affiant saw Duffie arrive at Stephens' residence. Duffie remained in the house for approximately five minutes, then drove to LaGrange, arriving at 2:55 p.m., and delivered one pound of marijuana to Hayes. Duffie was arrested, and nine additional pounds of marijuana were found in his vehicle. The affidavit concluded: "Based upon the above information from informants and affiant's investigation the affiant believes there is probable cause to believe that marijuana is being stored at the residence of Richard Furman Stephens. . . ."

We find no error in the issuance of a search warrant based upon this affidavit. Each informant's tip was consistent with information received from the other informants. In addition, affiant's own investigation corroborated the information supplied by the informants. "Our decisions applying the totality of circumstances analysis . . . have consistently recognized the value of corroboration of details of an informant's tip by independent police work." Illinois v. Gates, 103 SC 2317, supra at 2334. In Gates, the affiant police officer corroborated details of a letter written by an anonymous informant that the defendants were transporting drugs from Florida to Bloomingdale, Illinois. "The corroboration of the . . . [informant's] predictions that the Gates' car would be in Florida, that Lance Gates would fly to Florida in the next day or so, and that he would drive the car north toward Bloomingdale all indicated, albeit not with certainty, that the informant's other assertions also were true. 'Because an informant is right about some things, he is more probably right about other facts, . . .' " Id. at 2335.

The showing of probable cause in the present case is of full strength with that of Gates. Information concerning the drug transaction centered around the Stephens' home. The affiant's independent investigations corroborated Stephens' involvement with Duffie, especially in the hours immediately preceding Duffie's

attempted sale and subsequent arrest.

Stephens contends that the informants did not report seeing drugs on the premises, nor did the police overhear the conversations between Duffie and Stephens. He insists that the fact that the officer observed Duffie enter and leave Stephens' house without carrying with him any object which could be marijuana is conclusive proof that Stephens did not supply the contraband which Duffie transported to LaGrange, and that these considerations vitiate all other inferences which might otherwise constitute probable cause for issuance of the warrant.

Not so. By no means is probable cause to be equated with proof by even so much as a preponderance of evidence. As stated in Gates, "[P]robable cause does not demand the certainty we associate with formal trials." Id. at 2336. The issuing magistrate *now* need only conclude that there is a "fair probability that contraband or evidence of a crime will be found in a particular place." Id. at 2332.

We find that the magistrate had a substantial basis for concluding that probable cause existed to issue the warrant.

While we today adopt the rule of Illinois v. Gates, we do so not without caveat, for it is, at heart, a rule of subjectivity. One judge's "probable cause" can be another judge's "inarticulable suspicion" — as witnessed by the thoughtful assessment of the Court of Appeals in this case, followed by our contrary view.

Prudence counsels that Gates be considered as the *outer limit* of probable cause. Accordingly, we urge that attesting officers and magistrates make every effort to see that supporting affidavits reflect the maximum indication of reliability, along the lines of Aguilar-Spinelli, whenever and wherever that shall be feasible.

*Judgment reversed. All the Justices concur, except Smith, J., who dissents.*

DECIDED FEBRUARY 6, 1984 —
REHEARING DENIED MARCH 6, 1984.

*Arthur E. Mallory III, District Attorney, Robert H. Sullivan, Assistant District Attorney,* for appellant.
*Ansell T. Maund III, Daniel F. Byrne,* for appellee.

SMITH, Justice, dissenting.

Today's majority opinion, which reverses a decision of the Court of Appeals mandating suppression of certain seized evidence, is replete with phrases like "practical, common-sense approach," "subjectivity," "the outer limit of probable cause," and protection of Fourth Amendment (Code Ann. § 1-804) values "whenever and

wherever feasible." Like Justice Brennan, I am inclined to view such talk as "code words for an overly permissive attitude toward police practices in derogation of the rights secured by the Fourth Amendment [Code Ann. § 1-804]." Illinois v. Gates, —— U. S. —— (103 SC 2317, 2359, 76 LE2d 527) (1983) (Brennan, J., dissenting). Because I cannot join in this court's continued erosion of those rights, see *LoGiudice v. State,* 251 Ga. 711 (309 SE2d 355) (1983) (Smith, J., dissenting); *Bothwell v. State,* 250 Ga. 573, 580 (300 SE2d 126) (1983) (Smith, J., dissenting), I dissent.

I would affirm the Court of Appeals in this case, not merely because its opinion is a "thoughtful assessment" (as conceded by the majority), but because it is correct. In a careful analysis of the recent Gates decision, Judge Pope wrote:

"While the Supreme Court has retreated from the 'two-pronged' Aguilar-Spinelli test . . . it has by no means emasculated the Fourth Amendment (Code Ann. Ann. § 1-804). Indeed, the court reiterated that '(a)n affidavit must provide the magistrate with a substantial basis for determining the existence of probable cause,' and 'wholly conclusory statement(s)' will not suffice. 51 USLW at 4716. The affidavit must contain sufficient facts to enable the magistrate to make an independent determination of probable cause based upon those facts and 'reasonable inferences' drawn from them. Id. 'Sufficient information must be presented to the magistrate to allow that official to determine probable cause; his action cannot be a mere ratification of the bare conclusions of others. In order to ensure that such an abdication of the magistrate's duty does not occur, courts must continue to conscientiously review the sufficiency of affidavits on which warrants are issued.' Id. Thus, the same principles which have traditionally constituted the foundation of probable cause determinations continue in force . . . The only difference is that an otherwise sufficient warrant will not be struck down because the affidavit failed to meet one of the Aguilar-Spinelli prongs in isolation.

"In looking to the totality of the facts provided in the affidavit at issue, together with the reasonable inferences to be drawn from them, we do not see a substantial basis for concluding that drugs were then on defendant's premises. The suspicion that drugs were there was founded upon [an informant's hearsay information alleging] defendant's suspected drug activity together with his association with another person who was then believed . . . to be engaging in a drug transaction. Although it was known that defendant's associate was in frequent contact with defendant and was seen at defendant's home several times, and that it was further known or suspected that defendant's associate had stored the drugs somewhere, there is nothing in the affidavit which supports a finding, factually or

inferentially, that the drugs were stored at defendant's home . . ." *Stephens v. State,* 167 Ga. App. 417, 419-20 (307 SE2d 9) (1983).

This analysis is, in my view, entirely correct. Even disregarding the obvious flaw in the state's case — that the affidavit contains no facts demonstrating "the 'veracity' and 'basis of knowledge' of persons supplying hearsay information," Illinois v. Gates, 103 SC at 2332 — there is likewise nothing in the affidavit to show that there existed "a fair probability that contraband or evidence of a crime will be found in a particular place." Id. The alleged criminal activity was carried out entirely by Duffie, not appellant. Appellant was never seen in possession of illegal drugs; nor was Duffie ever seen carrying drugs when approaching or leaving appellant's residence. No fact or reasonable inference drawn from a fact contained in the affidavit supports a finding that appellant bought or sold illegal drugs or had stored contraband at his house. The facts linking appellant to Duffie, such as frequent telephone calls and prolonged visits at appellant's home, are as consistent with innocent activity carried on by friends as they are with criminal activity. One's prolonged and frequent association with an alleged drug dealer, without more, is insufficient to provide probable cause for issuance of a search warrant. See *Thornton v. State,* 125 Ga. App. 374 (187 SE2d 583) (1972).

Today's majority opinion (page 183) asserts that "[t]he showing of probable cause in the present case is of full strength with that of Gates." This is simply not true. In Gates police received an anonymous letter describing in great detail the Gates' drug operation, including their method of buying large quantities of drugs in Florida and transporting them back to Illinois. Through vigorous investigation, police were able to corroborate the essential elements of the tip, including "Lance Gates' flight to Palm Beach, his brief, overnight stay in a motel, and apparent immediate return north to Chicago in the family car, conveniently awaiting him in West Palm Beach, . . ." 103 SC at 2334. These details corroborated facts, set out in the anonymous letter, which supported the conclusion that Gates was actively involved in drug trafficking. The Supreme Court relied heavily on this "independent police work," as well as the great detail contained in the original tip, in upholding the search warrant issued there. Id.

Here we simply have no facts implicating appellant in illegal conduct, only bare allegations of crime coupled with sightings of appellant in the company of Duffie. Since there are no facts showing illegal behavior by appellant, there could be no corroboration of these facts as in Gates. Thus, the purported showing of probable cause was much weaker here than in Gates, which the majority describes as defining "the outer limit of probable cause."

Although the Gates decision abandoned the traditional Aguilar-Spinelli test for determining the reliability of search warrants issued on hearsay affidavits, that decision should not be read as an invitation to abdicate the judicial duty of reviewing probable cause determinations, as a majority of this court seems to think. See 103 SC at 2332. To my mind the majority opinion leaves very little content in the term "probable cause" for issuance of a search warrant. We dilute the plain words of the Fourth Amendment (Code Ann. § 1-804) when we begin using terms like "fair probability," "inarticulable suspicion," and "the outer limit of probable cause." What is required for issuance of a search warrant is solid probable cause — that is, the justifiable belief that a crime is being or has been committed, Brinegar v. United States, 338 U. S. 160, 175-76 (69 SC 1302, 93 LE 1879) (1949) — not suspicion, speculation, innuendo, guilt by association, or the conclusory assertions of three unnamed, unknown informants not found to be reliable and whose tips were never verified.

The majority's admonition to issuing magistrates to "make every effort" to employ Aguilar-Spinelli "whenever feasible," on the one hand, while reversing a lower court decision which strove to safeguard the very values the majority purports to esteem, is a spectacular display of judicial doubletalk. What the majority really seems to be saying to issuing magistrates is this: "Use the Aguilar-Spinelli rules when convenient, otherwise ignore them." This case is, in my view, another regrettable step toward allowing the state, without reasonable justification, to infringe on the privacy of a freedom-loving people.[1]

"Rights secured by the Fourth Amendment (Code Ann. § 1-804) are particularly difficult to protect because their 'advocates are usually criminals' . . . But the rules 'we fashion [are] for the innocent and guilty alike' . . . By replacing Aguilar and Spinelli with a test that provides no assurance that magistrates, rather than the police, or informants, will make determinations of probable cause; imposes no structure on magistrates' probable cause inquiries; and invites the possibility that intrusions may be justified on less than reliable information from an honest or credible person, today's decision threatens to 'obliterate one of the most fundamental distinctions between our form of government, where officers are under the law,

---

[1] This court is free, under the Georgia Constitution, to reject the "rule" of Illinois v. Gates and retain the Aguilar-Spinelli framework for reviewing hearsay affidavits offered to support the issuance of search warrants. See *LoGiudice v. State,* 251 Ga. 711, 715 n.6 (309 SE2d 355) (1983) (Smith, J., dissenting).

and the police-state, where they are the law.' " Illinois v. Gates, 103 SC at 2359 (Brennan, J., dissenting).

I can only add that I believe this case is the first of many disasters spawned by Illinois v. Gates, and is a clear example of what happens when courts start "playing around" with the plain dictates of the Constitution. It is a sign of our judicial times that a man can be convicted based on an uncorroborated tip from an anonymous informant in which the only illegal activities described are those of a third person. One must look long and hard at the "totality of the circumstances" to see probable cause in this situation. With all the important issues facing this court, why should we publish an opinion so non-instructive and inconclusive as to require a disclaimer like the one contained in the last two paragraphs of the majority opinion? The law enforcement officers and magistrates of this state, who are charged with conforming their conduct to the dictates of the Constitution, deserve more guidance than this court is willing to give. I respectfully dissent.